John W. Cochrane et al., as Executors, etc., Respondents, *v.*
Cornelia Elizabeth Schell, Appellant, Impleaded, etc.,
et al., Respondents.

Under the provision of the Statute of Uses and Trusts (1 R. S. 728, § 55,
subd. 3) authorizing the creation of an express trust "to receive the
rents and profits of land and apply them to the use of any person," such
a trust may be created for the payment of annuities.

An annuity is not a "sum in gross" within the provision of said statute (1 R.
S. 730, § 63), declaring that the "rights and interest of every person for
whose benefit a trust for the payment of a sum in gross is created are
assignable."

Where such a trust is constituted, duly limited in point of duration, the
title to the whole estate vests in the trustee during the trust term, although
the valid trust purpose will not absorb the whole income, and connected
with the lawful purpose is an express or implied direction for an unlaw-
ful accumulation, except, at most, when the valid purpose is nominal
only, being inserted as a mere cover for the unlawful accumulation.

The tendency of the courts is toward liberality in construing the Statute
of Uses and Trusts, and while there is no abatement in the strictness
with which limitations are construed which transgress the rule of per-
petuity, dispositions, by way of trust within that limit, will be sustained
if they can fairly be brought within the spirit of the statute, although
not within its literal language.

By the will of S. and a codicil he gave to his executors his residuary estate,
real and personal, in trust, to collect and receive the rents and income, and
out of the net proceeds to pay certain annuities amounting in all to $20,000,
during the life of his daughter S., and upon her death to convey said estate
to such of his grandchildren named as should then be living, to whom he
devised and bequeathed the same. If any of said grandchildren should die
previous to the death of S., leaving issue, such issue to take the parent's
share. Of the grandchildren named some were adults at the time the will
was executed. The net annual income derived from said estate had been
for several years prior to the testator's death and continued thereafter to be
over $80,000. No disposition was made in terms of the surplus income. In
an action for the construction of the will, *held,* that it created a valid trust,

and the grandchildren took remainders, which would vest in possession upon the death of S.; that the trust interest was inalienable and required the estate to continue in the trustees during the life of S. (1 R. S. 730, § 63); that in the absence of any express direction a direction for the accumulation of the surplus income was to be implied; that this implied direction was void, as it was to commence at the testator's death, and might be for the benefit of persons not then in being, and was for the benefit of adults as well as infants (1 R. S. 726, § 37), but that this did not affect the validity of the trust; that it could not be inferred that the primary object of the testator was to create the trust as a cover for a scheme of unlawful accumulation; that the surplus income belonged to and was distributable among the grandchildren named as "the persons presumptively entitled to the next eventual estate (1 R. S. 726, § 40); that, assuming the grandchildren took vested remainders, they were not absolute remainders in fee, as upon the death of any grandchild during the trust term leaving issue, such issue, whether born before or after the death of the testator, would take the decedent's share by substitution and as purchasers, and such a con- tingent limitation over necessarily suspended the power of alienation.

Where the whole income of such a trust is not required for the valid trust pur- poses, the court cannot set apart a portion of the capital of the fund, which may be deemed sufficient to produce the income required for these purposes.

*Hawley* v. *James* (16 Wend. 61), distinguished.

*Lang* v. *Ropke* (5 Sandf. 363); *Griffin* v. *Ford* (1 Bos. 123), limited.

Reported below, 64 Hun, 576.

(Argued December 5, 1893; decided January 16, 1894.)

Appeal by the defendant, Cornelia Elizabeth Schell, from a judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 3, 1892, which modified, and affirmed as modified, a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This is an ordinary action for the construction of a will.

The testator, Adam W. Spies, after making various devises and bequests, disposed of his residuary estate as follows:

"*Ninth.* All the rest, residue and remainder of my estate, both real and personal, I give, devise and bequeath to my executors and trustees hereinafter named, and to the survivor and survivors of them and their successors, in trust, neverthe- less, to collect and receive all rents of my real estate, and all interest, dividends and income from my personal estate, and after paying all taxes, insurance and other legal and necessary expenses thereon to pay thereout to my daughter Sarah Ann,

the widow of William B. Kip, during her natural life the sum of ten thousand dollars per annum. I further direct my said executors and trustees to pay to Adam W. Spies Cochrane, a child of my deceased daughter Hilah, the sum of three thousand dollars annually, until the death of my daughter Sarah Ann, and that they further pay therefrom to my granddaughter Cornelia Elizabeth Schell the sum of three thousand dollars annually, until the death of my said daughter Sarah Ann, and that they further pay thereout to Arthur De Witt Cochrane, a child of my deceased daughter Hilah, the sum of one thousand dollars annually, until he shall arrive at the age of twenty-five years, or whichever event shall first happen, but in case the said Arthur De Witt Cochrane shall arrive at the age of twenty-five years before the decease of my said daughter Sarah Ann, then I direct my said executors and trustees to pay over to him from and after said age of twenty-five years the sum of three thousand dollars annually until the death of my said daughter Sarah Ann; said payments to my three grandchildren to be made in quarter-yearly payments, and to be free from the control of any husband of my said granddaughter.

"*Tenth.* I hereby authorize and empower my said executors and trustees, and the survivors and survivor of them, during the continuance of the above trust and for the purposes above mentioned, to sell and dispose of any and all of my real estate at public or private sale, to let or lease the same, and to sell, assign and transfer any or all of my personal property, for the purposes of carrying out said trust, they to re-invest the proceeds thereof in their names as such executors and trustees, but I hereby direct that they shall not invest in any stocks or bonds of any manufacturing or metal mining company, but shall invest in good bonds and mortgages on productive real estate, Northern State bonds, United States securities and the bonds of trunk lines of railroads earning and paying dividends on their stocks, I hereby giving and granting to my said executors and trustees full power and authority to change from time to time said bonds and securities into non-taxable

securities when, in their judgment, such change will inure to the benefit of my estate."

"*Twelfth.* At the death of my said daughter Sarah Ann, to close this trust, I direct that my executors and trustees convey and transfer all of my estate, both real and personal, then remaining in their hands to such of my grandchildren as shall then be living (except my said granddaughter Sarah Ann French), viz.: Arthur DeWitt Cochrane, Adam W. Spies Cochrane, Cornelia Elizabeth Schell, Henry Spies Kip, Garret Berg Kip, William Rudolph Kip and Florence Adele Kip, equally, share and share alike, and I hereby give, devise and bequeath the same to such seven grandchildren, but if any of said seven grandchildren shall die previous to the decease of my daughter Sarah Ann, leaving issue, him, her or them surviving, then I direct that such issue shall take the share to which their parent would have been entitled hereunder (if living) under this clause of my will, said shares to be received by said grandchildren or their descendants free from any control or claim of any husband that she or they may have at any time."

By the second codicil to his will he included his grandchild Sarah Ann French in the foregoing provisions, by the terms of which she had been originally expressly excluded, and accordingly provided as follows:

"*Third.* I hereby direct my executors and trustees, out of the rents of my real estate, interest, dividends and income from my personal property mentioned in the ninth clause of my said last will and testament, to pay to said Sarah Ann French the sum of three thousand dollars annually until the death of my daughter Sarah Ann, said payments to said Sarah Ann French to be made in quarter-yearly payments, and to be free from the control of her husband.

"*Fourth.* I hereby direct that my said granddaughter Sarah Ann French shall be included in the division of my estate as mentioned in the twelfth clause of my said last will and testament and shall share therein equally with my other seven grandchildren, I hereby directing that said twelfth clause of

said will shall apply to her and her heirs as though she had been originally named therein."

The testator left him surviving the defendant Sarah Ann Kip, his only living child, and the person mentioned in the ninth clause of the will, and the eight grandchildren referred to in the foregoing provisions. The defendant Cornelia Elizabeth Schell is the child of the testator's deceased daughter Mary S. Barnes. Sarah Ann French, Adam W. Spies Cochrane and Arthur De Witt Cochrane are the children of the testator's deceased daughter Hilah M. S. Cochrane. Henry Spies Kip, Garret Berg Kip, William· Ruloff Kip and Florence Adele Kip are the only children of the surviving daughter Sarah Ann Kip. This surviving daughter, and the other defendants mentioned, who are the children of the deceased daughters Mary S. Barnes and Hilah M. S. Cochrane, respectively, are the testator's only heirs at law and next of kin. All of the heirs at law and next of kin are now of full age. All but one of the Kip children, the children of the surviving daughter, are now infants, but within four or five years will all be of age.

The testator's estate consists of both real and personal property. After the payment of the bequests and the indebtedness, the residuary estate amounts to one million of dollars in real estate, yielding an annual income of about thirty thousand dollars, and two millions of dollars in personal estate, yielding an annual income of about sixty thousand dollars.

The testator died a little less than two years after making his will, and the court below found that "the net income of the said estate for three years prior to the decease of the said Adam W. Spies, from both his real estate and personal property, exceeded the sum of eighty thousand dollars per annum, of which about three-fourths were derived from personalty and one-fourth from realty, and it is probable that the annual net income will continue to exceed the sum of eighty thousand dollars, and be derived in about the same proportion as above stated from personalty and realty."

It was also found that "the personalty included stocks and

bonds of such a kind that sufficient thereof could be set aside to furnish the amount required to pay the annuities provided for by the ninth clause of the will without affecting the balance of the property."

The annuities thus provided for now amount to twenty thousand dollars, and after 1897, when Arthur De Witt Cochrane will reach the age of twenty-five, may, by the terms of the ninth clause, amount to twenty-two thousand dollars per year.    There is now a surplus of income of upwards of sixty thousand dollars per year, and the question presented by this appeal relates to the disposition to be made of this surplus.

It is claimed in behalf of the appellant, the only child of the testator's deceased daughter Mary S. Barnes, that the trust attempted to be created by the ninth clause of the will is invalid, and that the remainders limited to the eight grandchildren are dependent on the trust and fall with it, and further, that assuming the trust to be valid, the income from the real and personal estate not required for payment of the annuities, is distributable to the heirs at law and next of kin of the testator, and in case of intestacy, according to the nature of the property from which it will arise, and does not go under section 40 of the Revised Statutes, entitled "Of the creation and division of estates," to the eight grandchildren.

The court below, at Special Term, upheld the validity of the pretended trust, and declared that the residuary estate "is vested in remainder in the grandchildren of the testator named," subject to the trust estate, and found, "That, in consequence of a valid limitation of an expectant estate in said residuary estate, there has been a lawful suspension of the power of alienation thereof, during which a part of the rents and profits thereof are undisposed of."

Thereupon the court declared that the eight grandchildren named in the twelfth clause and the codicil were entitled to the surplus income as persons presumptively entitled to the next eventual estate.

SICKLES—VOL. XCV.        66

Upon this decision judgment was duly entered, adjudging that the eight grandchildren were entitled to the surplus income in equal shares as aforesaid, and that the same should be paid to them "and to the heirs at law and next of kin of such of them as should die during the lifetime of the said Sarah Ann Kip."

The General Term, deeming it unnecessary to pass upon the point last decided at Special Term, on the ground that it was a premature determination of a question which might or might not arise hereafter, modified the judgment by striking out the provision adjudging that the share of the income of each grandchild dying during the lifetime of Mrs. Kip would go to his or her heirs and next of kin, and as thus modified affirmed the judgment.

*Joseph H. Choate* and *James Otis Hoyt* for appellant. Assuming that a valid trust for the payment of annuities has been created by the ninth clause of the will, it is nevertheless true that the testator has died intestate as to the surplus income after the payment of the annuities, and that this surplus must be distributed among the heirs at law and next of kin, and does not belong to the eight grandchildren named in the twelfth clause, as persons entitled to the next eventual estate within the meaning of 1 Revised Statutes, 726, section 40. (*In re Chauncey*, 119 N. Y. 77; *Chamberlain* v. *Taylor*, 105 id. 193; 1 R. S. 723, § 9; *Radley* v. *Kuhn*, 97 id. 26 ; *Manice* v. *Manice*, 43 id. 303, 367– 371; *Moore* v. *Lyons*, 25 Wend. 119, 144; *Nodine* v. *Greenfield*, 7 Paige, 544, 548; *Baker* v. *Lorillard*, 4 N. Y. 257, 269, 270; *Mead* v. *Mitchell*, 17 id. 210, 213; *Sheridan* v. *House*, 4 Abb. Ct. App. Dec. 218; *Moore* v. *Littel*, 41 N. Y. 66, 98; *Taggart* v. *Murray*, 53 id. 233, 238 ; *Jenkins* v. *Fahey*, 73 id. 355; *Smith* v. *Scholtz*, 68 id. 40, 60, 61; *Wilson* v. *White*, 109 id. 59, 60, 61; *Kent* v. *Church of St. Michael*, 136 id. 10, 15; *Doe* v. *Considine*, 6 Wall. 458, 475– 477 ; *McArthur* v. *Scott*, 113 U. S. 340, 378, 379 ; *Kane* v. *Gott*, 24 Wend. 641.) No trust whatsoever, valid or other-

wise, was in fact created or intended to be created by the testator in the ninth and tenth clauses, as to either the realty or the personalty. Subject to the charge of the annuities, all of the residuary estate descended, according to its nature, to the heirs at law and next of kin of the testator. It is just as if the testator had directed his executors as such to pay these annuities during the life of the daughter. (*McGowan* v. *McGowan,* 2 Duer, 57; *Griffin* v. *Ford,* 1 Bosw. 123; *Chamberlain* v. *Taylor,* 105 N. Y. 185; *Cooke* v. *Platt,* 98 id. 39; *Tilden* v. *Green,* 130 id. 50; *In re Willets,* 112 id. 289.)

*William G. Choate* for Sarah Ann Kip, respondent. The court below rightly determined that the surplus income after payment of the annuities belonged to the eight grandchildren in equal shares. (1 R. S. 722, 723, 725, 726, 727, 728, 730, 773, §§ 7, 8, 9, 10, 11, 14, 15, 32, 40, 45, 50, 55, 63; *McGowan* v. *McGowan,* 2 Duer, 57; *Griffin* v. *Ford,* 1 Bosw. 123; *Kane* v. *Gott,* 24 Wend. 641; *Gott* v. *Cook,* 7 Paige, 521; *Maurice* v. *Graham,* 8 id. 483; *Degraw* v. *Clason,* 11 id. 136; *Hunter* v. *Hunter,* 17 Barb. 25, 90; *Clute* v. *Bool,* 8 Paige, 85; *Phelps* v. *Pond,* 23 N. Y. 81, 83; *Gilman* v. *Reddington,* 24 id. 12, 19; *Harrison* v. *Harrison,* 37 id. 543, 548; *Savage* v. *Burnham,* 17 id. 561; *Haxton* v. *Corse,* 2 Barb. Ch. 516, 517; *Boynton* v. *Hoyt,* 1 Den. 53, 58; *Williams* v. *Murrall,* L. R. [23 Ch. Div.] 360; 1 Jarman on Wills [6th ed.], 272, 282; *Lackland* v. *Reynolds,* 9 Hare, 796.) The interests of the eight grandchildren under this will in the capital of the residuary estate are vested remainders in fee subject only to be divested as to each of them, if at all, in case they die during the life of Mrs. Kip leaving issue surviving them. Their interests are neither contingent upon their surviving Mrs. Kip, nor are their remainders liable to be defeated in favor of the survivors by their death without issue during her life. (*Jones* v. *Colbeck,* 9 Ves. 42; *Freeman* v. *Coit,* 96 N. Y. 68; *Clarke* v. *Leupp,* 88 id. 228; *Warner* v. *Durant,* 76 id. 136; *Smith* v. *Edwards,* 88 id. 92; *Doe* v. *Considine,* 6

Wall. 458 ; *Hill* v. *Bacon,* 106 Mass. 578 ; *Smither* v. *Willock,* 9 Ves. 234 ; *Byrnes* v. *Stilwell,* 103 N. Y. 453 ; *Bowditch* v. *Ayrault,* 138 id. 222.)

*William G. Wilson* for Florence Adele Kip and others, respondents. There is here a valid limitation of an expectant estate, suspending the power of alienation or the ownership. (*Cooke* v. *Lowry,* 95 N. Y. 103 ; *Kilpatrick* v. *Johnson,* 15 id. 324 ; *Gilman* v. *Reddington,* 27 id. 19.) The eight grandchildren are the persons presumptively entitled to the next eventual estate. (*Jones* v. *Colbeck,* 9 Ves. 42 ; *Freeman* v. *Coit,* 96 N. Y. 68 ; *Roseboom* v. *Roseboom,* 81 id. 356 ; *Manice* v. *Manice,* 43 id. 303 ; *Croxall* v. *Shererd,* 5 Wall. 287 ; *Doe* v. *Considine,* 6 id. 458 ; *Hawley* v. *James,* 16 Wend. 137 ; *Smither* v. *Willock,* 9 Ves. 234 ; *Bowditch* v. *Ayrault,* 138 N. Y. 222 ; *Byrnes* v. *Stilwell,* 103 id. 453.)

*Charles Steele* for Sarah Ann French and others, respondents. The General Term was right in limiting the judgment of the Special Term to the questions presented by the existing state of facts. (*Horton* v. *Cantwell,* 108 N. Y. 255 ; *Goebel* v. *Wolf,* 113 id. 405.) The grandchildren do not take absolutely vested remainders, but vested remainders subject to being divested by their death, before the termination of the trust. (*In re Denton,* 137 N. Y. 428; *Palmer* v. *Horn,* 84 id. 516, 520 ; *Downing* v. *Marshall,* 23 id. 366, 373, 374 ; *Hoppock* v. *Tucker,* 59 id. 202, 208 ; *Page* v. *Gilbert,* 32 Hun, 301, 304 ; *Ferrer* v. *Pyne,* 81 N. Y. 281, 285 ; *Barker* v. *Lea,* 1 T. & R. 412 ; *Manier* v. *Phelps,* 15 Abb. [N. C.] 123.) The trust created by the ninth and tenth paragraphs of the will is valid, and vests the whole residuary estate in the trustees during the life of Mrs. Kip. (*Delafield* v. *Shipman,* 103 N. Y. 463 ; *Moore* v. *Hegeman,* 72 id. 376 ; *Donovan* v. *Van De Mark,* 78 id. 244 ; *Hawley* v. *James,* 16 Wend. 60 ; *Gilman* v. *McArdle,* 99 N. Y. 451 ; *Cook* v. *Lowry,* 95 id. 103 ; *Gray* v. *Hegeman,* 92 id. 508 ; *Horton* v. *Cantwell,* 108 id. 255.) The surplus income being undisposed of· by the will,

belongs to the persons presumptively entitled to the next eventual estate. (*Cook* v. *Lowry,* 95 N. Y. 103; *Byrnes* v. *Stilwell,* 103 id. 453; *Delafield* v. *Shipman,* Id. 463.) Even if the devise in trust of the residuary estate to the executors should be held to be invalid in part, the portion as to which the invalidity is declared would not go to the heirs, but to the eight grandchildren in equal parts. (1 R. S. 729, §§ 60, 61.)

*Frank S. Hall* for executors, respondents. The trust created by the ninth and tenth paragraphs of the will is valid, and vests the whole residuary estate in the trustees during the life of Mrs. Kip. (*Leggett* v. *Perkins,* 2 N. Y. 297; *Vernon* v. *Vernon,* 53 id. 351; *Moore* v. *Hegeman,* 72 id. 376; *Donovan* v. *Van De Mark,* 78 id. 244, 248; *Hawley* v. *James,* 16 Wend. 60; *Pray* v. *Hegeman,* 92 N. Y. 508; *Delafield* v. *Shipman,* 103 id. 463; *Gilman* v. *Reddington,* 24 id. 19.) The undisposed of rents, profits and income should go to the grandchildren who are "presumptively entitled to the next eventual estate." (*Brewer* v. *Brewer,* 11 Hun, 147; 72 N. Y. 603; *Hobson* v. *Hale,* 95 id. 588; *Cook* v. *Lowry,* Id. 103; *Kilpatrick* v. *Johnson,* 15 id. 322; *Gilman* v. *Reddington,* 25 id. 19; *Manice* v. *Manice,* 43 id. 384; *Pray* v. *Hegeman,* 92 id. 502; *Barbour* v. *De Forest,* 95 id. 13.)

ANDREWS, Ch. J. The time fixed by the will for the final vesting of the estate is the death of the testator's daughter Sarah Ann Kip. Whatever view, therefore, may be taken as to the nature of the remainders, whether they are regarded as vested or contingent, there can under the will be no suspense of the power of alienation of the estate beyond the period of a single life in being at the death of the testator. The remainders must vest in possession on the death of the daughter, and whether vested or contingent they do not, as limited, transgress the rule of perpetuity, and unless they fail for some other reason they must be sustained.

The judgment below affirmed the validity of the trust

created by the ninth section of the will and of the remainders given to the eight grandchildren of the testator by the twelfth section and adjudged that the income from the trust estate, beyond what was required to pay the annuities given by the ninth section, belonged to and was distributable among the eight grandchildren, all of whom are still living. The General. Term did not in terms decide whether the remainders given to the grandchildren were vested or contingent, and declined to pass upon the question argued by some of the counsel, whether upon the death of any grandchild during the continuance of the trust estate, leaving no issue, the share of the one so dying would descend to his or her heirs or next of kin, or would accrue by survivorship to the surviving grandchildren. The General Term was of the opinion that as this latter question might never become a practical one, and was not material to the disposition of the question before it, its determination should be postponed until an exigency arises which shall render its determination necessary. The decision of the General Term upon this point is justified upon the ground stated, as also by a consideration of the issues framed by the pleadings, and involves to so great an extent a matter of judicial discretion, that this court should not, we think, review its conclusion.

The primary question in the case respects the validity of the trust created by the ninth section of the will. It is claimed in behalf of the appellant that the trust is void on the ground that it was a trust for the receipt of rents, profits and income of real and personal estate to pay annuities, and that this is not a purpose for which an express trust, under the 3rd subdivision of section 55 of the Statute of Uses and Trusts, is authorized, and that consequently, under section 58 of the same statute, no estate in the land vested in the trustees, and that the whole estate subject to the payment of the annuities as a charge descended according to its nature to the heirs and next of kin of the testator. The remainders it is insisted were so limited as to be dependent upon the trusts, and that failing, the remainders fell also. The further claim is made

that even if the trust is valid to any extent, it can be sustained only as to such portion of the estate as is required to provide an income to meet the annuities, and that the residue of the estate beyond that amount is liberated from the trust.

The validity of the trust will be first considered, and in disposing of this question it will be convenient to regard it as a trust of realty only, since if it can be sustained as a trust of that species of property, *a fortiori* can it be sustained as a trust of personalty. By the ninth section of the will the testator devised and bequeathed to his executors and trustees all the residue of his real and personal estate in trust, to collect and receive the rents, profits and income and pay thereout, first the taxes, insurance and expenses, and then the annuities specified therein during the life of the daughter. The substantial purpose of the trust expressed in the ninth section, and the only one which it can be claimed supports the title in the trustees, was to pay the annuities mentioned, amounting in the aggregate to the sum of $20,000. The payment of the charges and the annuities would not exhaust the probable income of the estate. It is found that the net annual income of the testator's estate for three years prior to his death had been $80,000, and that it was probable that the annual income thereafter during the trust term would exceed that sum. There was no express direction for the accumulation of the large surplus income which would be likely to arise and be received by the trustees, nor any express disposition thereof as such made by the will. But in the absence of any express direction for accumulation or other disposition, it would be the duty of the trustees under the will to retain and accumulate it, and from this duty a direction for accumulation is implied. (*Gilman* v. *Reddington*, 24 N. Y. 9.) If the will in this respect is carried out, the accumulated fund, together with the *corpus* of the estate, will go to the eight grandchildren or their issue at the termination of the trust under the twelfth section. But it is conceded that the implied direction for accumulation is void, because it was to commence at the testator's death and was, or might be, for the benefit of

persons not then in being, and of adults as well as infants. (1 Rev. St. 726, § 37; *Manice* v. *Manice*, 43 N. Y. 376.) This implied direction for an unlawful accumulation is one of the grounds relied upon for invalidating the trust and will be hereafter considered.

The testator attempted to create a trust under the 3d subdivision of sec. 55 of the Statute of Uses and Trusts. The main objection to the trust, viz., that a trust for the receipt of the rents and profits of land for the payment of annuities, is not one of the purposes for which an express trust can be created under that subdivision, presents a question which has not, as we understand, been adjudicated by any court of final jurisdiction in this state. But in the case of *Lang* v. *Ropke* (5 Sandf. 363) Judge DUER expressed the opinion that a trust to pay annuities could not be created under the 3rd subdivision of section 55 of the statute, but only under the 2nd subdivision. The question in that case related to the validity of a trust of real and personal property created by will, which as was claimed unduly suspended the power of alienation. It was insisted that alienation was suspended, not only during the life or minority of the youngest child of the testator, but also during the lives of two annuitants whose annuities were charged on the income of the estate. The learned judge first answered the claim by showing that if the annuities suspended alienation, they being distinct and independent, the suspension would terminate as to each annuity and as to each share of the capital set apart to produce it, on the death of the annuitant, thus creating a suspension at most for two lives, viz., the life of the youngest child of the testator and of an annuitant in addition, a term within the statutory period. The learned judge having thus given a conclusive answer to the objection made, proceeded to make the further answer that annuities charged on land or the rents and profits of land, whatever direction may be given for their payment, are alienable by the beneficiary and do not suspend the power of alienation of the land by the trustee, for the reason that a

trust for the payment of annuities can only be created under the 2nd subdivision of section 55, and that such a trust is not subject to the prohibitory clauses of sections 60 and 63. The learned judge rests his opinion that a trust to pay annuities could not be constituted under sub. 3 of § 55, but only under sub. 2 of that section, upon the case of *Hawley* v. *James* (16 Wend. 61), which, as he understood it, " settled the law " upon the question. The same conclusion was re-affirmed by the same judge in *Griffen* v. *Ford* (1 Bos. 123), following the supposed authority of *Hawley* v. *James* and his prior opinion in *Lang* v. *Ropke*, but in *Griffen* v. *Ford*, as in *Lang* v. *Ropke*, the decision of the point does not seem to have been necessary to uphold the judgment rendered. The opinion of this eminent jurist is entitled to the highest respect, especially on a question of this character. But we have been unable, upon a careful examination of the decision in *Hawley* v. *James*, to find that the question was there decided, and we are confirmed in the opinion that the judgment in that case furnishes no support to the doctrine that a trust to pay annuities cannot be lawfully constituted under the 3rd sub. of sec. 55, by the remarks of the chancellor in *Clute* v. *Bool* (8 Pai. 83), who interprets the opinions in *Hawley* v. *James* as leading to a conclusion directly contrary to the view taken by Judge DUER. The case of *Hawley* v. *James* is one of the landmarks in the exposition of the law of uses and trusts, as modified by the Revised Statutes. There were two main questions in that case : First, whether the trust term was lawfully constituted in respect of duration; and, second, whether the remainders could be saved, although it should be held that the trust was void. Both of these questions were determined adversely to the limitations in the will, and the trust term and remainders were held to be void for remoteness. By the will certain annuities were given by independent clauses, absolute in form, and preceding the clauses constituting the trust. The trustees were directed to pay the legacies and annuities out of the profits and income of the estate. One of the questions argued at the bar was whether the trust was created for a purpose which, if

the trust was otherwise valid, would vest the legal title to the estate in the trustees during the trust term, and the purpose principally relied upon to sustain the title of the trustees was the trust for the payment of annuities. This question only became important in case it should be held that in point of duration the trust was legal. If the trust term was void, as transgressing the statute, valid trust purposes would not suffice to uphold the trust. The question whether a trust to pay annuities could be lawfully constituted under the 3rd sub. of sec. 55 so as to support a legal title to the estate in the trustees, was considered in some of the opinions. Judge NELSON was of opinion that such a trust could be created under the 3rd sub., and also that an annuity under a trust was not a gross sum within the last clause of sec. 63, and was, therefore, inalienable by the beneficiary. Judge BRONSON condemned the purpose of the trust on the ground that it was a trust to " pay over " and not to " apply " the rents and profits of lands, raising a question which was not finally settled until the decision in *Leggett* v. *Perkins* (2 N. Y. 297). Judge BRONSON agreed with Judge NELSON that an annuity was not a gross sum within the 63rd section. Judge COWEN was in favor of sustaining the will in its general aspects, but condemned some of the remoter limitations. The decree in the case is given in full in the report. It adjudged the trust term and the remainders to be void, because they violated the rule of perpetuity.

The decree (as we read it) does not determine whether the trust was created for lawful purposes, or for purposes which would vest the title to the estate in the trustees if the trust was otherwise valid. It preserves the annuities and provides for their payment, but imposed upon such of the annuitants as were heirs of the testator the duty to elect whether they would take under the will, or as in case of intestacy. There is no express declaration of the ground upon which the annuities were sustained. We think the inference from the opinions, in connection with the decree, is that they were regarded as separate and independ-

ent gifts distinct from the trust, and could be sustained as a charge although dissevered from the trust, and that the direction to the trustee to pay the annuities out of the income of the estate was inserted merely as a convenient mode of satisfying the charge. We think it cannot be gathered that the court decided, or intended to decide, that a testator could not, under the 3rd sub. of sec. 55, constitute a trust to pay annuities, and make them, not a charge merely on rents and profits, but an inalienable interest under sec. 63. In *McSorley* v. *Wilson* (4 Sandf. Ch. 515) the testator, by the will under consideration in that case, created a trust of real and personal estate, among other purposes to pay out of the rents and profits an annuity to his mother for life. The trust was held to be void on the ground that the power of alienation of the estate was suspended during three lives, the life of the annuitant being reckoned as one. The vice-chancellor, referring to the annuity, said : " This is an inalienable trust interest and requires the estate to continue in the trustees while she lives." This seems to be a precise adjudication upon the question now presented.

There are no authorities on the subject binding upon this court, and it becomes necessary in this case to determine upon the statute, interpreted in view of its language and the policy which shall seem most consistent with the legislative intent, the question whether a trust to pay annuities may be created under the 3rd subdivision of sec. 55. The legislature did not, by the revision, create uses and trusts, but regulated them only. It was deemed wise to define and limit the purposes for which express trusts in land might be created, which should vest the legal title in the trustees during the continuance of the trust. They are included in the enumeration in sec. 55. But trusts under the name of trust powers were left undefined. Powers in respect of lands are trusts, but a valid, express trust, under the statute, to receive the rents and profits of the trust estate, is a power coupled with the title.

The question early arose as to the principle of construction to be applied to the statute, whether it should be strict

and technical, confining the authorized trusts to the narrowest limits, or liberal so as to embrace as far as possible all the cases where the exigencies of families and family arrangements might reasonably require the separation for the time being of the legal and equitable estates. The apprehension was frequently expressed by eminent judges that difficulty might arise from the attempt to limit so closely as was done in the revision, the purposes for which express trusts might be created (see COMSTOCK, Ch. J., *Downing* v. *Marshall*, 23 N. Y. 380), but this view was vigorously opposed by DUER, J., in *Lang* v. *Ropke*. One of the great questions which vexed the courts from a period soon after the revision, arose on the construction of the 3rd sub. of sec. 55, that is to say, whether a trust to receive the rents and profits of land, and "pay" them over to a beneficiary, was an application of the rents and profits under that subdivision. After a long contest the question was finally settled adversely to the advocates of a strict construction. The reports show an increasing tendency in the direction of liberality in construing the statute, and while there has been no abatement by the courts of the strictness with which limitations are construed, which transgress the rule of perpetuity, arrangements within that limit, and dispositions by way of trust are sustained if they can fairly be brought within the spirit of the statute, although not within its literal language. In considering whether a trust to pay annuities out of rents and profits of real estate is a valid trust within the 3rd sub. of sec. 55, and if so whether the interest of the annuitant is inalienable under the operation of sec. 63, it is important to bear in mind that it does not tend to solve the question to show that annuities which are a charge simply on real estate or on the rents and profits of real estate are alienable at common law, as they undoubtedly are. The same is true of the rents and profits of land. But the precise object of the 63rd section was to take away for the time being the alienable quality of interests connected with and based upon a trust constituted under the 3rd sub. of sec. 55, which otherwise would be alienable. The trusts authorized by the 2nd

sub. of that section are in the main trusts involving the aliena-
tion of the *corpus* of the estate.    If the authority to lease
lands under that subdivision would authorize a trust to receive
the rents and profits by way of lease for the purposes men-
tioned therein, and a trust to pay an annuity could only be
constituted under that subdivision, it would confine the power
of a testator who desired to preserve the *corpus* of the estate,
and at the same time provide by a trust, for annuities to be
paid out of income, within narrow limits.    The primary pur-
pose of subdivision 3 of sec. 55, as stated by the revisers,
was to enable the owner of lands to make provision for
the maintenance of infants, married women or improvident
persons out of the rents and profits of his estate, and of sec. 63,
to make the interest of the beneficiary inalienable.    (Revisers'
notes to sections 55 and 63.)    But for obvious reasons the
objects of a trust under the 3rd subdivision were not specified,
and it permits a trust for the receipt of rents and profits for the
benefit of any person whomsoever.    We are unable to perceive
any reason why a trust for the receipt of the rents and profits of
land for the benefit of an annuitant is not within the purpose
of sub. 3, as much as a trust to pay the whole or an aliquot
part of such rents and profits to beneficiaries.    Provision by
way of annuity is usually intended for maintenance.    The tes-
tator, by providing for payments at periodical times of fixed
sums by way of annuities, secures to the annuitant a certain
and constant means of. support to the extent of the annuity
given.    In this way he can measure his bounty according
to what he shall deem to be the necessities or desert of the
annuitants, and if a trust under sub. 3 can be created for the
payment of annuities, and the interest of the annuitant is sub-
ject to the operation of sec. 63, the latter is, in a measure at
least, secured against penury resulting from improvidence or
misfortune.    The payment of an annuity out of the rents and
profits of land is as much an application of rents and profits
as is the payment over of a share of the rents and profits, the
amount of which is not ascertainable until realized.    There is
another suggestion which we think is entitled to weight in

determining this question. Trusts of personal property, as is well known, are not fettered by the limitations prescribed for trusts of real estate. They may be created for any purpose not unlawful, subject only to the law of perpetuity. (*Gott* v. *Cook*, 7 Pai. 521.) The title to personal property, given in trust, vests in the trustee, for the purposes of the trust, and continues in him until those purposes are accomplished. The increase of personal property in this age of commercial and business activity has been so rapid that it now represents a large aggregate of the wealth of the world. It cannot be questioned that a trust of personalty may be created to any amount, limited only by the possessions of the testator, for the payment of annuities out of income. Meanwhile the title remains in the trustee, and so long as the interest of the beneficiaries continues, any disposition of the *corpus* not authorized by the instrument creating it would be in contravention of the trust. The case of *De Peyster* v. *Clendining* (8 Pai. 295) is an instance of a trust of personalty to pay annuities to a large amount out of income, and the chancellor was of opinion that the interest of the annuitant was inalienable under sec. 63. There is a manifest propriety is assimilating as far as practicable the rules governing trusts and limitations of real and personal property, and the tendency in this direction has been very marked in the decisions of the courts. (*Graff* v. *Bonnett*, 31 N. Y. 9; *Cutting* v. *Cutting*, 86 id. 523; *Williams* v. *Thorn*, 70 id. 270; *Hutton* v. *Benkard*, 92 id. 295; *Cook* v. *Lowry*, 95 id. 103.) It would be unfortunate, we think, if it was necessary to distinguish between trusts of real and personal property for the payment of annuities out of income, holding such trusts valid as to one species of property and void as to the other. Upon the best consideration we are able to give to the subject we are brought to the conclusion that the opinion of Nelson, J., that a valid trust to pay annuities out of the rents and profits of land, may be created under sub. 3 of sec. 55, is a sound exposition of the law. We concur also with the opinions of Judge Nelson and Judge Bronson, expressed in *Hawley* v. *James*, that an

annuity is not a gross sum within the exception in sec. 63. That term is applicable where a single sum is given, payable at one time or in installments, but not to periodical sums given as annuities are usually given, for permanent maintenance. Such provisions are within the policy of the prohibition against assignments contained in that section. But if an annuity may be considered as a gross sum, we do not perceive that it would change the result in this case, provided a trust for the payment of annuities may be created under the 3rd sub. of sec. 55. The case of *Radley* v. *Kuhn* (97 N. Y. 27) is an example of a provision in a will for the payment of a gross sum within the statute.

It is insisted, however, that assuming a trust for the payment of annuities may be created under sub. 3 the trust is void, because the trust was in fact a cover for a scheme of unlawful accumulation. If the estate continues to yield an income equal to what it was yielding at the death of the testator, it will be sufficient to pay, not only the annuities charged, but there will be a very large sum in addition, which surplus is impliedly directed to be accumulated during the life of the testator's daughter, and which direction is concededly void. The court is asked to infer that the primary purpose of the testator was to constitute an unlawful trust for accumulation. It may be conceded that to support a trust under the 3rd subdivision there must be a purpose within that section, not illusory and nominal merely, but real and substantial. The objection assumes that the testator contemplated that no contingencies could arise where, by losses, or shrinkage in values, or bad investments, or change in the rate of interest, the whole or substantially all the income of the estate would be required to pay the annuities. He did plainly intend that the whole income should be pledged for the payment of the annuities. Is it possible for the court to say that the trust for the payment of annuities amounting to $20,000 was evasive and veiled the real purpose of the testator? The statute contemplates that there may be an unlawful direction for accumulation contained in a will or other instrument, but it applies the

remedy. It makes the direction void. (1 Rev. St. 726, § 38.) It does not avoid the instrument containing the unlawful direction, although this would be the consequence if it subserved no purpose except to provide for the unlawful accumulation. But limitations of the estate, not depending upon the unlawful accumulations, are unaffected. The cases are numerous which hold that a trust otherwise lawfully constituted is not invalidated because of an unlawful direction for accumulation. (See *Williams* v. *Williams*, 8 N. Y. 538 ; *Phelps* v. *Pond,* 23 id. 82.) The surplus income to which the unlawful direction relates, will pass under the rules of the common law, or under section 40 of the statute. (1 Rev. St. 726, § 40.) In this way the purpose of the statute limiting accumulations is effected, and a testator has no motive to transgress its provisions. It is worthy of notice that in the will under consideration in *Hawley* v. *James*, there was an implied direction for accumulation extending in legal effect during thirteen lives, and that but a small part of the probable income would be required for the intermediate purposes of the will, but neither of the judges who took part in that case referred to this as a ground for invalidating the trust. We think the only rule consistent with the authorities is, that where a trust constituted under sub. 3 of sec. 55, is duly limited in point of duration, but connected with the lawful purpose is an express or implied direction for an unlawful accumulation, the title to the whole estate vests in the trustee during the trust term, although the valid trust purpose will not absorb the whole income, except perhaps where the valid purpose is nominal merely, and it can be seen that it was inserted as a mere cover for an attempted illegal accumulation. (*Phelps* v. *Pond,* 23 N. Y. 69 ; *Gilman* v. *Reddington,* 24 id. 19 ; *Savage* v. *Burnham,* 17 id. 561.) The claim that the court should direct the setting apart of sufficient of the capital of the estate to produce the annuities, leaving the remainder of the estate to go to heirs or next of kin until the death of the testator's daughter, cannot be supported. There was a similar suggestion made when the case of *Hawley* v. *James* was before the chancellor (5 Pai. 318), and he declared that

the Court of Chancery had no power to divest the legal title
of the trustees to any portion of the estate. (See 1 Rev. St.
729, § 60.) We conclude, therefore, that the trust in the will
now under consideration was valid, except as to the implied
direction for accumulation.

The remaining question relates to the persons who are now
entitled to the rents, profits and income, not required to pay the
annuities. It is claimed on the one side that they go to the
heirs and next of kin of the testator, according to the nature
of the property, and on the other, that, by force of section 40
of the article on the creation and division of estates (1 Rev.
St. 726), they belong to and are distributable among the eight
grandchildren as the persons presumptively entitled to the next
eventual estate. By the rule of the common law, where there
is a specific devise of a future estate, and no disposition of the
intermediate rents and profits, they go to the heir, unless there
is a residuary devise, not future or contingent, in which case they
go to the residuary devisee. But a residuary bequest of per-
sonalty, whether future or contingent, carries the prior income,
and where real and personal estate are blended in one residuary
gift the rule as to personalty governs. The same rules are
applicable to trusts. (*Glanvill* v. *Glanvill,* 2 Mer. 38; *Genery*
v. *Fitzgerald,* Jac. 468; *Ackers* v. *Phipps,* 3 Cl. & Fin. 665;
*In re Dumble,* L. R. [23 Ch. Div.] 360; 1 Jar. [5th ed.]
652.) But it was held that where the devise or gift was of a
residue, as to part of which the disposition fails, that part will
not accrue in augmentation of the remaining part, as a residue
of a residue, but instead of retaining the nature of residue,
devolves as undisposed of. (*Skyrmsher* v. *Northcote,* 1 Sw.
566.) This last rule is applied by the English courts in the
construction of the Thellusson Act (39th and 40th George III,
ch. 98) to the disposition of income unlawfully directed to be
accumulated, and it is held that such income goes to the heirs
and next of kin, as in case of intestacy, and not to the resid-
uary legatee or devisee, under that clause in the act which
declares that such surplus income " shall go to such person or
persons as would have been entitled thereto if such accumula-

tion had not been directed." (1 Jar. [5th ed.] 312, 602.) If the rule of distribution was the same under our statute as under the English statute there might be some ground for claiming, in this case, that as the gift of the residue included by intendment the unlawful accumulation, the heirs and next of kin were entitled to it. Section 40 of our statute, before referred to, prescribes the rule of distribution in cases within it, and if it applies to the surplus income in question it must furnish the rule of distribution. That section is: "When, in consequence of a valid limitation of an expectant estate, there shall be a valid suspense of the power of alienation, or of the ownership, during the continuance of which the rents and profits shall be undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate." It must be conceded, we think, that the surplus rents and profits were undisposed of within the meaning of this section. The implied disposition attempted was unlawful and void, and it is the same as if no disposition whatever had been attempted. ( *Williams* v. *Williams*, 8 N. Y. 525.) It is claimed in behalf of the appellant that the remainders given to the grandchildren were vested and not contingent. This was conceded by all the parties heard before us, except that the counsel for the executors suggested that the decision of the question was not now necessary. We shall assume, without deciding the question, that the appellant is right in this contention. It is claimed that if the grandchildren took vested remainders, then the statute does not apply, for the reason that the limitation of a vested expectant estate does not suspend the power of alienation, and that it is only where the power of alienation is suspended by a contingent limitation of a future estate, that sec. 40 applies. In other words, that the present estate in the trustees, although the power of alienation is suspended thereby, by force of sections 63 and 65 of the Statute of Uses and Trusts, does not create the suspension which brings the case within sec. 40, because that only applies where the

suspension is "in consequence of a valid limitation of an expectant estate." This construction of the statute seems to be the natural construction according to the ordinary meaning of the language. It seems to have been assumed by the revisers and the legislature that if the future estate was vested and absolute, the surplus income would, without any statutory rule, go to the persons in whom the estate was ultimately to vest in possession. (See *Gott* v. *Cook*, 7 Pai. 521.) But however this may be, we think the appellant, to succeed in her contention, must at least be able to point out that no contingency attended any of the limitations of the future estates, which prevented the conveyance by persons in being of an absolute remainder in fee. This, we think, cannot be done. Upon the death of any grandchild during the trust term leaving issue, such issue, whether born before or after the death of the testator, would take by way of substitution and as purchasers, the share of the deceased parent. Assuming as we have that the grandchildren took vested remainders, it is the common case of a limitation to one person in remainder, with a gift over to another person on the death of the first remainderman or the happening of any other event before the remainder vests in possession. The first remainderman takes a base or qualified fee, subject to be divested in favor of some other object on the happening of the contingency specified. Such a contingent limitation over necessarily suspends the power of alienation, provided it is or may be in favor of persons not in being at the death of the testator, and the suspense continues so long as there is a possibility that persons may come into being who would be entitled to take under the ulterior limitation. This was the situation in this case. Until the death of a grandchild during the term it could not be ascertained in whom the remainder in the share of the one so dying would vest. Issue not yet in being may be born who will be entitled to take under the will. That the word issue in the will means children is plain from the context, and that it is word of purchase, and not of limitation, is plain also. (*Nodine* v. *Greenfield*, 7 Pai. 544; *Crystie* v.

*Phyfe,* 19 N. Y. 345; *Smith* v. *Scholtz,* 68 id. 42; *Mead* v. *Mitchell,* 17 id. 210; *Wilson* v. *White,* 109 id. 59; 2 Jar. [5th ed.] 104.) The case is clearly within section 40. The power of alienation is suspended by a valid limitation of a contingent expectant estate to the issue of the grandchildren, and meanwhile the rents and profits are undisposed of. The remainders to the grandchildren, whether vested or contingent, may ripen into a fee simple absolute. They are the persons entitled to the next eventual estate within the meaning of sec. 40, however it might be considered if they took a life estate only, and their estate, if they survive the daughter of the testator, will vest in possession concurrently with the termination of the trust estate and the period of accumulation. Holding as we do that the trust is valid, the contention on behalf of the appellant, based on the invalidity of the trust, that the future estates are so limited that they cannot be supported because dependent upon the trust, becomes immaterial, nor is it necessary to determine who would be entitled to the intermediate rents and profits of the estate, if it was held that the precedent estate failed and that the future estates were nevertheless valid.

We think the judgment below correctly disposed of the questions in the case, and it should, therefore, be affirmed, with costs of all parties to be paid out of the estate.

All concur, except BARTLETT, J., not sitting.

Judgment affirmed.