(41 App. Div. 235.)

### HOOKER v. HOOKER et al.

(Supreme Court, Appellate Division, Second Department. June 6, 1899.)

1. WILLS—ANNUITIES—CREATION OF TRUST.
    A trust to pay an annuity is a valid express trust under the statute of uses, and the annuity cannot be assigned or released by the annuitant.

2. PERPETUITIES—SUSPENSION OF POWER OF ALIENATION.
    A testamentary trust, to continue during the lives of the testator's widow and of the survivor of his two daughters, is void, as suspending the power of alienation for three lives.

3. WILLS—CONSTRUCTION.
    A residuary devise to the executor provided, in consecutive paragraphs, for paying $100 a month from the income to the testator's wife while she continued a widow. At the end of each year the unexpended balance of the income was to be divided into three parts, one of which was to be paid to the widow, and the other two invested for the two minor children, aged, respectively, 14 and 11. In case the widow remarried, $2,000 was to be paid to her, and, in case she survived both children, and they should leave no issue, $25,000 was to be paid her. If either daughter should die, leaving issue, such issue was to receive the share of the parent at the age of 21. On the death of both daughters, leaving no issue, and after the provisions of the will for the benefit of the wife should have been carried out, the remainder was devised over to certain others. *Held* to create a single trust, to continue only during the lifetime of the widow, or until she remarried, and that on the termination of the trust the property, by implication, was to go to the two children, or the survivor, or their issue;

and further, that the directions in case of the death of either or both of the children refer to their death during the continuance of the trust.

4. SAME.

Where a will is open to two constructions, one of which will suspend the absolute ownership of the property devised for more than two lives, so as to be void, the other construction will be adopted.

Appeal from special term, Kings county.

Action by Caroline C. Hooker against Adah Louise Hooker and others. From the judgment, plaintiff and part of defendants appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

John A. Taylor, for appellant Caroline C. Hooker.

Edward S. Kaufman, appellant guardian ad litem.

G. Woodward Wickersham, T. Ellett Hodgskin, and J. Edward Swanstrom, for respondents.

CULLEN, J. This action was brought to obtain a construction of the will of Matthew Hooker, who died November 30, 1897, possessed of real and personal estate amounting to about $50,000, and whose will is as follows:

"I, Matthew Hooker, of the city of Brooklyn, do make, publish, and declare this to be my last will and testament, as follows: 'First. I order and direct the payment of my funeral and testamentary expenses and all my just debts. Second. I give and bequeath to my wife, Caroline C. Hooker, all my household furniture of every description. Third. I give, devise, and bequeath to my executor, hereinafter named, all the rest, residue, and remainder of my estate, both real and personal, in trust for the following uses and purposes: To invest and reinvest the same in such securities as are allowed by the laws of the state of New York, and dispose of the income resulting therefrom as follows: (1) To pay over to my said wife the sum of one hundred ($100) dollars per month as long as she shall remain unmarried, upon condition that she shall provide a home for my two children as long as they are unmarried. At the end of each year I direct my executor to divide the unexpended balance of said income into three (3) equal parts; one part to be paid to my wife, and the other two parts to be invested in equal amounts for and on account of each of my children, until they shall arrive at the age of twenty-one years. Should either one of my said children die without issue, then the share of the one so dying to be paid to the survivor. (2) If my said wife should remarry, I order and direct my executor to pay to her immediately after said remarriage the sum of two thousand ($2,000) dollars. If my said wife should survive my two daughters, and they leave no issue, then I order and direct my said executor to pay to my said wife the sum of twenty-five thousand ($25,000) dollars. Each and all of the provisions made for the benefit of my said wife herein are to be accepted by her in lieu of all claims for dower against my estate. (3) If either one of my daughters should die, leaving issue, such issue to receive the share of the parent at the age of twenty-one years. (4) Upon the death of my daughters, leaving no issue, and after the provisions of this, my last will, made for the benefit of my wife, shall have been carried out, I order and direct my executor to divide the balance of my estate into four (4) equal parts, and dispose of the same as follows: To pay to my brother George, residing at Burwashwheel, Sussex, England, one of said parts, or, in the event of his death, to his heirs; to pay my sister Mary Walker, formerly Mary Hooker, residing in England, one of said parts, or, in the event of her death, to her children in equal shares; to pay to the wife of my brother David one of said parts, or, in the event of her death, to the daughters of my said brother David, in equal shares; to pay one of said parts to Percy Forey, son of my sister Adah, or, in the event of his death, said part to be divided equally among the

other beneficiaries mentioned in this clause of my will. Fourth. I hereby nominate, constitute, and appoint the People's Trust Company, of the city of Brooklyn, executor and trustee under this, my last will and testament, and request that it shall not be required to give bonds as such, and I hereby empower it to sell, assign, transfer. mortgage, and convey, by good and sufficient acts and conveyances in the law, at such time or times as they may deem proper, at public or private sale, any and all of my estate, both real and personal, for the purpose of carrying out the provisions of this, my said will, as hereinbefore mentioned; and I hereby revoke all former wills by me heretofore- made."

The substance of the decision of the special term is (1) that the annuity to the widow is a mere charge on the estate in the hands of the executor, and that the direction for its payment did not create a trust for that purpose; (2) that, subject to the charge of the annuity, the testator, by his will, constituted three trusts, each in a third of his estate,—one in favor of the widow during her life, and one for each of his daughters during her life; (3) that as to the remainder after her death, as to the corpus of her share held in trust for the widow, the testator died intestate, and that that share passes to his next of kin; (4) that as to each daughter's share on the death of such daughter if leaving issue the share passes to such issue,—if without issue, the income should be paid to the survivor; (5) that if the widow survives both the daughters, and the daughters die without issue, then the widow is to receive $25,000 from the principal of the estate; (6) in case both daughters die without issue, then, after the payment of $25,000 to the widow in case she survived both daughters, the remainder of the ·shares of the two daughters is to be divided between the four persons named in the fourth subdivision of the third clause of the will. Even a casual perusal of this will shows the great difficulty of the task imposed upon the courts in determining its proper construction, and the validity of its provisions; and the more carefully the will is examined the greater the difficulty appears. We suppose that, if possible, we are bound to give some interpretation to every will executed in conformity with the requirements of law, and to ascertain the intent of the testator. There must, however, be some limit to this rule, and a point may be reached where the language of a will is so confused and uncertain as to render it impracticable to say, with any reasonable degree of certainty, what the intention or will of the testator is. The will before us approaches closely the border line, if it has not passed it. Two rules for the construction of wills are elementary: First, that a construction which renders the provisions of the will legal will be preferred to one that renders those provisions illegal; second, that a construction which prevents intestacy will be preferred to one that creates intestacy; though for the purpose of rendering the disposition of a will valid, or preventing intestacy, the plain language of the will cannot be disregarded. In disposing of the problem before him, the learned judge at special term has accomplished the first object,—that is to say, the construction adopted by him renders the provisions of the will legal; but he has partially failed in the second, since the result of his construction is that the testator died intestate as to

the principal of one-third of his estate. But the whole structure erected by the decision of the special term rests on the proposition that the first subdivision of the third clause of the will does not create a trust for the payment of an annuity for the widow, but that the annuity is merely a charge on the estate, which could be released by the annuitant, or be satisfied by the purchase of an annuity for her benefit. This view we think erroneous. In Cochrane v. Schell, 140 N. Y. 516, 35 N. E. 971, it was distinctly held that a trust for the payment of an annuity is a valid express trust under the statute of uses and trusts, and that the annuity is inalienable, and cannot be assigned or released by the annuitant. The counsel · for the respondents claim—a claim in which the learned judge at special term apparently acquiesced—that the Cochrane Case was overruled by the later decision of Buchanan v. Little, 154 N. Y. 147, 47 N. E. 970. We do not understand the later case to have any such effect. In the opinion in the Buchanan Case there is no mention of the Cochrane Case, and it is hardly possible that the earlier case would be overruled without the slightest reference being made to it. In the Buchanan Case the trustees were directed to pay out of the income annuities to two persons during their respective lives, and divide the remainder of the income between two other beneficiaries, the testator's two daughters, during their lives. The will constituted a single consolidated trust; and we suppose, if there had been nothing else in the will than the provisions which we have alluded to, the trust would have been created for four lives, and therefore bad under the statute. But by the sixth clause of the will the testator in express terms, upon the death of his two daughters, gave all his property, real and personal, to their grandchildren. It was this provision that saved the trust, for it was held, both by the appellate division (6 App. Div. 527, 39 N. Y. Supp. 671) and by the court of appeals, that by its terms, on the death of those two daughters, the trust ceased, whether the annuitants, or either of them, were then living or not. The appellate division further held that the annuities ceased with the termination of the trust, while the court of appeals held that the annuities survived the trust as charges on the realty. But in the opinion of neither court is there to be found any discussion of the proposition announced and expressly decided in the elaborate opinion of Judge Andrews in the Cochrane Case, that a trust to pay an annuity is a valid trust, and suspends the power of alienation during the trust term. Whatever be the obscurities in the other provisions of the will before us, it is clear that the dominant intention of the testator, in creating the trust directed by his will, was to provide the annuity to his widow. It was the surplus of income above the widow's share, and only the surplus, that was to be divided between the widow and the two children. The claims of the annuitant could not be satisfied by setting apart a portion of the estate to provide an income for her. She would be entitled, at any time in the future, to the income of the whole estate, if that was necessary to realize her annuity; and she cannot be subjected to the contingency that for any reason a part of the estate, apparently

now sufficient to produce annually the amount of the annuity, should prove hereafter unproductive, or inadequate for the purpose. We do not question the doctrine that, though a trust is apparently and in language single for the benefit of several beneficiaries, yet if, in substance, it is a separate trust of an aliquot share for the benefit of each beneficiary, and the share is liberated from the trust by the death of such beneficiary, the trusts are valid and legal to the same extent as if in express terms the testator had directed a separate trust in each share. Such is the principle of Savage v. Burnham, 17 N. Y. 561, Wells v. Wells, 88 N. Y. 323, and of many other cases. The difficulty in the present case is that, assuming a trust is created for the life of each daughter, as found by the special term, there can be no severance of their trust shares from the trust share of the widow. Therefore, if the trust is to continue during the lives of the daughters, the power of alienation would be suspended for three lives,—that of the two daughters and the widow,—and the testamentary direction is void. We are therefore of opinion that the interpretation of the will adopted by the special term, and contended for by the counsel for the respondents, renders the will void.

All the parties before us have assumed that the clause of the will under examination created a trust during the lives of the widow and the two daughters, the difference between them being that the respondents claim that there were three several trusts created, while the appellants contend that the trust was single. If this is the only question in the case, then we have held that the testamentary dispositions of the will are void. It is with some hesitation that we proceed further, for it may be we are about to enter upon the borderland between speculation or conjecture and proof. However, we are of the opinion that none of the parties has succeeded in discovering the true intent of the testator. We have quite a strong belief that the testator really intended to dispose of his estate as follows: (1) To create a single trust of all his estate, the annuity and one-third of the surplus income above the annuity to be paid to the widow, the remainder of the surplus to be divided between the children, or, in case of the death of one, to go to the survivor; this trust, however, to continue only during the lifetime of the widow, or until she remarried. (2) On the death or remarriage of the widow the trust was to cease, and the property go to his two children, or the surviver, or their issue. (3) That the direction that in case of the death of a child, leaving issue, the issue shall take the share of their parent, and also the further provision that in case of the death of both children without issue, then, after the payment of the widow's claim, the remainder of the estate shall be paid over to the four persons named in the fourth subdivision of the third clause of the will, refer only to the death of the children during the continuance of the trust; and that if the children, or either of them, survive the termination of the trust, their shares are not subject to defeat by subsequent death without issue. This scheme is comparatively clear and simple. It involves no intestacy, and is legal, for in no event is the

absolute ownership of the property or the absolute power of alien-
ation suspended beyond the life of the widow. But it is not suffi-
cient that such a will should be a natural one, and legal, for we
cannot make a will for a testator, however good our work may be.
We must find in the written instrument evidence that such was
the actual intent of the testator. The proof that the trust was to
continue only during the widowhood of the testator's wife seems
to us reasonably clear. That is the only period of time prescribed
in the will. There is no direction that the executor shall apply
any part of the income to either of the daughters during her life.
In case one of the daughters should die pending the life of the
trust, there is an express direction that her part of the income
shall go to the survivor; but no provision is made for the dispo-
sition of the income on the death of the widow. The daughters
were children of the age of 11 and 14 years, respectively. The nat-
ural expectation of the testator must have been that one or both
would outlive their mother. The failure to make any provision for
the disposition of the income in such an event seems to us entirely
inconsistent with an intent that the trust should continue after the
happening of that event. There is no express gift of the principal
of the estate to the daughters upon the death of their mother, and,
if we find such a gift at all, it must arise by implication from the
subsequent provisions of the will, and from the fact that the tes-
tator speaks of giving to the issue the share of their parent, thus
indicating that the parent was, in some event, to have a share in
the estate. The gift over in the fourth subdivision of the third
clause upon the death of the daughters leaving no issue, if we con-
strue that direction as referring to any period of time when the
daughters may die without issue, suspends the absolute owner-
ship of the property during the lives of the widow and the two
daughters, and is therefore void. If limited, however, to the death
of the daughters during the widowhood of their mother, the abso-
lute ownership of the property is not suspended for more than one
life. If the will is equally open to the two constructions, we must,
therefore, adopt the latter, because it upholds the validity of the
will. The will itself shows that such was the intention of the tes-
tator. Much of the difficulty in the construction of this will arises
from the subdivision of the third clause, and the separation of va-
rious provisions which should be read together. After having
created the trust for the benefit of the widow, the testator then
proceeds to announce his testamentary disposition in the case of
contingencies the occurrence of which might naturally be expected.
In case his widow should remarry, as the trust for her benefit
would terminate, he directs that she shall receive the sum of $2,-
000. If the wife should survive the two daughters, and they leave
no issue, the testator directs that she shall receive the sum of
$25,000. Now, in our opinion, we should read ·the gift over as if
it immediately followed this direction in favor of the wife; that
is to say, upon the death of his two daughters, leaving no issue,
but the wife surviving them, the gift over is to take effect. This is
manifest from the language of the gift over itself, for it reads,

"After the provisions of this, my last will, made for the benefit of my wife, shall have been carried out, I order and direct my executor to divide the balance of my estate." It is only the balance of the estate after the payment of the $25,000 to the wife that is bequeathed, and no provision is made for the contingency that the wife might be dead at the time, an event the occurrence of which was not only possible, but probable, in case the clause referred to the death of the daughters at any time. We also think that, in case the widow should receive $25,000, then the trust in her favor was to cease. This appears from the amount of the testator's estate. The will was made but a few months prior to his death, when it is to be presumed his estate was substantially the same in amount. The estate would be insufficient to pay the widow $25,000, and also supply a capital sufficient to realize her annuity. Hence, if the trust was to continue, there would be nothing to pay over to the other legatees. The direction that, if either of the daughters should die, leaving issue, such issue should receive the share of their parent, must also be referred to the death of a daughter during the continuance of the trust, for it is found interjected between the provisions of the will in case of the wife surviving the daughters and the gift over upon the death of the daughters without issue, and evidently relates to the same contingency of the death of a daughter prior to the death of the equitable life tenant. We think that the testamentary scheme which we have indicated can fairly be spelled out of this will, and, as a different course will lead to declaring the will a nullity, we have determined, though not without hesitation, to hold that this is its proper construction, and thus render effectual that which we believe to have been the testator's real intent.

We are fully aware that under the authorities (In re Tompkins' Estate, 154 N. Y. 634, 49 N. E. 135) the dispositions of the will in case of a daughter dying with issue or without issue may be construed as limited to a death during the lifetime of the testator. Such construction seems to us not in harmony with the other provisions of the will. We know of no authority authorizing us to limit the provision in favor of the wife in case she should survive the two daughters to their death prior to that of the testator. Further, the youth of the two daughters at the time of making the will and at the death of the testator would seem to preclude any presumption that the testator thought those daughters would die before him, leaving issue.

The judgment of the special term should be reversed, and judgment entered in accordance with this opinion; costs to all parties to be paid out of the estate. All concur.