(88 App. Div. 506.)

UNITED STATES TRUST CO. OF NEW YORK et al. v. SOHER et al.

(Supreme Court, Appellate Division, First Department. December 11, 1903.)

1. WILLS—CONSTRUCTION—TRUSTS—INCOME—DISPOSITION.

Where testator bequeathed the residue of his estate to his executors in trust, with power of sale to pay unequal, graduated annuities to testator's two sons during life, and to one of such sons an additional legacy of $15,000 on his arrival at age, and declared that, if his estate was insufficient to pay all the legacies given to his sons as so provided, the legacies should be abated proportionately as the income might require, and providing that on the death of one of his sons, leaving issue, or the issue of a deceased child, one-half of the remainder of the estate, and all profits, accumulations, etc., should be distributed to such lawful children in fee, and, if the son died without children, but leaving his brother surviving, the entire estate was to go to the brother, the will should be construed as creating a single trust for the benefit of testator's children for the payment of annuities to them for life, with no valid provision for the disposition of surplus income.

2. SAME—STATUTES.

Real Property Law, § 51 (Laws 1896, p. 568, c. 547), provides that, if an accumulation of rents and profits be for a term longer than during the minority of the beneficiaries, it shall be void only as to the time beyond minority; and section 53 declares that when, in consequence of a valid limitation of an expectant estate, there is a suspension of the power of alienation or ownership, during the continuance of which rents and profits are undisposed of, and no valid directions for their accumulation are given, such rents shall belong to the persons presumptively entitled to the next eventual estate; and Personal Property Law, § 4 (Laws 1897, p. 508, c. 417), contains substantially the same provisions with reference to personalty. Held, that where a will directed an invalid accumulation of the income of real and personal property after testator's two minor sons had become of age, but declared that on the death of one of the sons, leaving children, one-half of the trust estate should pass to such children in fee, and, on default of children, to the other son and his children, the invalidity of the accumulation did not invalidate the trust, since, after the sons became of age, and until a child was born, the surplus income would pass to the brother of the son to whom the testator intended the accumulation should go in case the son first dying should have no children, and, immediately on the birth of a child, such child,

as the person entitled to the next eventual estate, would be entitled to the income of the undivided one-half which would be paid to him on the death of his father.

3. Same—Subsequent Legacies.

Where a will devised the remainder of testator's property to trustees in trust to pay unequal annuities to testator's two sons, and required that a legacy of $15.000 should be paid to one of the sons when he arrived at the age of 21 years, the trustees were not entitled to set apart from the accumulated income such a sum as, with interest compounded semiannually, would produce $15,000 at the date the legatee would become of age, but should deduct from each year's income an amount which, with interest, would produce the legacy at such time.

4. Same—Distribution of Income—Directions—Parties.

Where, on construction of a will, it was held that unborn children of beneficiaries would be entitled to surplus accumulations of income, it was error for the court to authorize the trustees, on the birth of such children, to apply to the court, at the foot of the judgment, for directions as to the subsequent distribution of such surplus income, since the rights of such children in such income could only be determined in an action to which they were parties.

Patterson and Hatch, JJ., dissenting in part.

Appeal from Judgment on Report of Referee.

Bill by the United States Trust Company of New York and another, as trustees under the will of Andrew Soher, deceased, against Le Roy Soher and another, for the construction of the will. From a judgment on a referee's report construing the will, defendants appeal. Modified.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Peter B. Olney, for appellant Le Roy Soher.
Thomas N. Rhinelander, guardian ad litem, for Rodney Soher.
Edward W. Sheldon, for respondent.

INGRAHAM, J.  Andrew Soher, a resident of the city and county of New York, died on the 9th day of February, 1901, the owner of considerable real and personal property in the county of New York, leaving a last will and testament, which was executed in the city of New York on the 5th day of November, 1900, and admitted to probate in the county of New York on the 17th day of April, 1901, the construction of which is the subject of this action. The testator's wife died before him, and he left two children, both minors at the time of his death; Le Roy, the older, having been born in January, 1882, and Rodney, the younger, in November, 1893. The testator left personal property of the value of upwards of $390,000, and a large amount of real estate; the total income from all of the property being in the neighborhood of $50,000 per year. The younger of his sons (Rodney) will become of age on the 2d of November, 1914.

We must first ascertain just what disposition of his property the testator intended, and then determine how much of the will can be sustained. After directing the payment of his debts, he gives to his two children certain personal property situated at his home, in England, and then gives, devises, and bequeaths all the rest, residue, and

remainder of his estate, real and personal, to his executors in trust, with a power of sale of all or any part of his real or personal estate before the division of his estate provided for by the will, and to invest and reinvest the proceeds arising upon the sale, and to apply the income thereof as subsequently directed. So far, we have one trust of all the rest, residue, and remainder of the testator's estate, and the questions involved arise upon the construction to be given to the terms of the trust upon which this property is to be held. There is clearly expressed an intention that this trust is primarily for the benefit of the testator's two children and their issue. The trustees are directed to apply and pay over so much of the rents, issues, income, interest, and profits of the trust estate "as may be necessary and proper towards the support, maintenance and education of each of my sons Le Roy and Rodney in a manner befitting their station in life until each respectively attains the age of twenty-one years, and as soon as each child attains such age then to pay to Le Roy the sum of Two thousand dollars annually in equal quarter yearly payments, until his lawful marriage, and to Rodney the sum of Three thousand dollars annually in equal quarter yearly payments until he shall have lawfully married, and in addition when Rodney arrived at age, the lump sum of Fifteen thousand dollars." These annuities to his two sons are to be increased upon his sons marrying.

The fourth clause of the will contains the direction as to the annuity to be paid to Le Roy during his life. The testator there directs that upon the marriage of Le Roy the executor should pay to him the sum of $4,500 in equal quarter-yearly payments, beginning from the date of such marriage; in case he should be still living with his wife at the end of 12 months from his marriage, the sum of $5,000 in equal quarter-yearly payments from that date; in case he should be married and living with his wife at the end of 24 months from his marriage, the sum of $5,500 in equal quarter-yearly payments from that date; and in case he should be still married and living with his wife at the end of 36 months from his marriage, the sum of $6,000 in equal quarter-yearly payments, beginning from said date; and from and after 36 months from his marriage his son Le Roy is to receive during each and every year of his natural life the sum of $6,000 in equal quarter-yearly payments.

The fifth clause of the will contains the provisions for his son Rodney. That clause provides that upon the marriage of his son Rodney the executors shall pay over to him the sum of $7,500 in equal quarter-yearly payments, beginning from the date of such marriage; in case he should still be married and living with his wife at the end of 12 months from his marriage, the sum of $8,000 in equal quarter-yearly payments from that date; in case he should be married and living with his wife at the end of 24 months from his marriage, the further sum of $8,500 in equal quarter-yearly payments; and in case he should be married and living with his wife at the end of 36 months from his marriage, the further sum of $9,000 in equal quarter-yearly payments from said date; and he was to receive from and after 36 months from his marriage during each and every year of his natural life, annually, the sum of $9,000, in equal quarter-yearly payments.

So far the intention would appear to be reasonably certain. Le Roy was to be supported out of the income from the trust until he should arrive at the age of 21 years, and from that time he was to receive the sum of $2,000 per year until his marriage. Upon his marriage he was to receive from the income of the trust estate the sum of $4,500 per year. If at the end of 12 months from the date of his marriage his wife should survive, and he be living with her, he was to receive the sum of $5,000 per year. Upon like conditions at the end of 24 months from his marriage he was to receive the sum of $5,599 per year, and after 36 months from his marriage he was to receive the sum of $6,000 per year. The same provision to be made in the case of Rodney, his younger son, except upon his marriage he was to receive the sum of $7,500 per year; 12 months after marriage, the sum of $8,000 per year; 24 months after marriage, the sum of $8,500 per year; and 36 months from his marriage, the sum of $9,000 per year. The word "further," as used in relation to two payments to be made to Rodney, was quite evidently not intended to give to Rodney that sum in addition to the amount then directed to be paid, as the amount payable to Rodney after 36 months from his marriage for the rest of his life was the sum of $9,000. By these provisions it would seem that there was but one trust created, from the income of which these annuities were to be paid, and any surplus income remaining after the payment of such annuities was simply income undisposed of by these provisions of the will. There was certainly no intention to create two trusts, one for the benefit of each of his two sons.

Although the courts have, in order to sustain a trust, construed a will which contained a trust for two or more individuals to be separate trusts, they have never, in the absence of an express direction, given such a construction where its effect would be to invalidate the will or violate the intention of the testator. The amount given to each child is not equal. It certainly could not be said that he intended that one-half of his estate should be held in trust to provide an income for each child, when the amount paid to one was considerably in excess of the amount paid to the other. By these provisions he treated the trust estate as one indivisible trust, and from the total income received from the trust estate the annuities were to be paid. From this income there was also to be paid to Rodney, when he arrived at the age of 21 years, the sum of $15,000. Certainly the testator did not intend, in case the surplus income from the portion set apart for Rodney should not equal this sum of $15,000, that that sum should not be paid. The direction to pay that sum is absolute. And that the · testator did not contemplate two separate trusts is clearly indicated by the tenth clause of the will, which provides:

"Should my estate [the testator clearly meaning the income from the trust fund] prove insufficient to pay in full all the legacies herein given to my said two sons as above provided, then such legacies are to be abated proportionately as the condition of the income of my estate may require."

This provision would be meaningless if two separate trusts were created, and clearly contemplates a single trust, from the income of which the several annuities and the legacy of $15,000 were to be paid.

We are constrained, therefore, to differ from the learned referee when he determined that there were created by this will two separate trusts, one for each of the testator's children; and this conclusion we have arrived at notwithstanding one paragraph in the sixth clause of the will, which, if the word "accumulations" could be construed to apply to the undisposed income of the estate, would seem to be in conflict with this conclusion. But this one clause, if this construction is to be given to it, would be in express conflict with all of the other provisions of the will, and would be inconsistent with what it seems the testator actually intended. Thus, the eleventh clause contains a provision that, "in case my executors or its successors should think it necessary at any time before the division of my said estate as above provided" (a division which clearly refers to that directed upon the death of either of his sons), they are authorized to sell and dispose of any and all of his real and personal estate. The twelfth clause contains another expression of the same intention; for there the executors are "from time to time and until the final division of my estate to apply and pay from funds coming into its hands out of the income of the estate all taxes, assessments, Croton water rents," etc., and are also authorized to apply any part of the income of his estate towards the rebuilding of any houses which may be totally destroyed by fire. All of the provisions of the will, with the single exception of the sixth clause, clearly contemplated one trust, and the direction to the trustees as to the management of the estate and the disposition of the income would be meaningless if there were two separate trusts. We have therefore what we consider to be a single trust created for the benefit of the testator's children, from the income of which certain annuities are to be paid to the children during their respective lives, with no valid provision for the disposition of the surplus income. It was also clearly expressed, we think, that this trust, as to one half of the property, should terminate upon the death of the child of the testator first dying, and continue as to the other half of the property until the death of the surviving child. The disposition of his property upon the death of his children is provided for by the sixth, seventh, eighth, and ninth clauses of the will. By the sixth clause it is provided that:

"Upon the death of my said son Le Roy leaving lawful children him surviving or the issue of any deceased child him surviving I direct that one half part of all the rest, residue and remainder of my estate, real, personal and mixed, and all profits, accumulations and investments of said one half part be conveyed, transferred, paid over and distributed by my executors or its successor amongst the said surviving lawful children of my said son Le Roy and the issue of any then deceased child of his, per stirpes and not per capita, in equal proportions, share and share alike in fee simple absolute forever."

The eighth clause directed that, in case Le Roy should die without leaving lawful children him surviving, "or the issue of any deceased child him surviving, but leaving his said brother Rodney or the issue of such brother surviving then I direct upon the death of said Le Roy the share of my estate which would otherwise have gone to the issue of said Le Roy be paid over and distributed by my ex-

ecutors or its successor to my said son Rodney if then living, or in case he should be then dead, to his then living issue in equal proportions, per stirpes and not per capita"; and the same provision, in identically the same language, is made for a disposition of one-half of the testator's estate upon the death of his son Rodney. These provisions contain the first direction as to the disposition of the estate after the termination of the trust, and, while they are not inconsistent with an intention to divide the trust estate, upon its creation, into two parts, there is no direction for such prior division. Such a direction is certainly entirely consistent with the other provisions of the will, which contemplate one trust, from which the annuities and the legacy of $15,000 to Rodney upon his arriving at the age of 21, are to be paid; and, to carry out the clearly expressed intention of the testator, it is not necessary to disregard all of the provisions which contemplate but a single trust.

The referee held that these four clauses of the will contemplated the accumulation of the undisposed of income, and the payment of such accumulations to the remaindermen upon the death of each of the testator's sons; that this direction for accumulations is void under section 51 of the real property law (chapter 547, p. 568, Laws 1896) and section 4 of the personal property law (chapter 417, p. 508, Laws 1897); and, if this will is to be construed as intending by the words "accumulations," in these clauses, to dispose of the surplus income, we agree with the referee. The referee, however, held that this direction as to accumulations did not avoid the whole will, but that such accumulated income was to be treated as income as to which no legal provision had been made, and thus immediately payable to the person entitled to the next eventual estate under the provisions of the statute. The appellants have disputed this conclusion of the referee, insisting that, as this provision for the accumulations of the income was such an essential part of the provision made by the testator for the division of his estate, it cannot be separated from the valid provisions of the trust, and that the whole trust must fail. We think this contention cannot be sustained. It is based upon cases which hold that where a portion of a trust is void, and the void provisions cannot be separated from the rest of the estate so that the intention of the testator will be given effect, or where disregarding the void provisions would create a condition which was clearly not contemplated by the testator, the whole trust will be declared void; but we are referred to no authority which holds that such a result follows from an invalid direction for accumulations of surplus income.

Section 51 of the real property law (chapter 547, p. 568, Laws 1896) provides that "all directions for the accumulation of the rents and profits of real property, except such as are allowed by statute, shall be void." It then specifies the instances in which such accumulation of the rents and profits are allowed, and says, "If in either case such direction be for a longer term than during the minority of the beneficiaries it shall be void only as to the time beyond minority." Section 53 of the real property law provides that "when, in consequence of a valid limitation of an expectant estate, there is

a suspension of the power of alienation, or of the ownership, during the continuance of which the rents and profits are undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate." Section 4 of the personal property law provides that "an accumulation of the income of personal property, directed by any instrument sufficient in law to pass such property is valid," where such an accumulation is to be for one or more infants, and is to terminate at or before the expiration of their minority; that "all other directions for the accumulation of the income of personal property, not authorized by statute, are void; but a direction for any such accumulation for a longer term than the minority of the persons intended to be benefited thereby has the same effect as if limited to the minority of such persons, and is void as respects the time beyond such minority." Here the statute expressly states the effect of a direction for an accumulation beyond the period authorized. It is not that a direction of such an accumulation shall have the effect of avoiding the provisions of the will in which it is contained, but that it shall be valid for the period authorized, but invalid for a longer period, and, in regard to the rents and issues of real property, where either no direction for the disposition of the surplus income is made, or where there is an illegal disposition of the surplus, that such surplus shall go to the persons entitled to the next eventual estate. The effect of a direction to accumulate rents, profits, and income is therefore expressly provided for by the statute; and unless the sole intent of the trust created is to accumulate such rents, profits, and income in violation of the statute, the effect is that such income directed to be accumulated in violation of the statute shall go to the persons entitled to the next eventual estate. Cochrane v. Schell, 140 N. Y. 516, 35 N. E. 971.

We are not impressed with the argument that the construction of the will that we have indicated, applying the provisions of the statute in relation to the surplus income, would violate the intention of the testator, or create such inequality as would justify us in declaring this whole trust void. The testator intended that his sons should receive a certain specified annuity from the income of his real property. That intention is preserved by holding that there was a single trust created, from which these annuities should be paid. He then evidently anticipated that one-half of his property should be paid to the issue of each child upon the death of that child. That intention is carried into effect. He undoubtedly intended that any accumulations of income should be paid to the descendants of a deceased child upon the death of the parent. That intention cannot be given effect, as it is prohibited by the statute; but, when such an attempt is made, the statute steps in and disposes of that surplus income. Until a child is born, it goes to the brother of the life beneficiary to whom the testator intended the accumulation should go in case the son first dying should have no children. Immediately upon the birth of a child, that child would be the person entitled to the next eventual estate as to one-half of the testator's property, and that child would then be entitled to the income of the undivided half

of the estate which would be paid to him upon the death of his
father. The only intention of the testator to which effect cannot
be given is that the trustees accumulate the surplus income, and,
upon the death of the life beneficiary without issue, pay it to his
brother; and, because of the provision of the statute, such surplus
income goes to the brother of the life beneficiary as it accrues. The
general scheme of the testator is thus carried out, except the part
directing the accumulation of income, which the statute expressly
declared to be void. There will undoubtedly be inequality in case one
of the testator's sons should have issue, and the other no issue; but
in that case the testator intended that the share of the one having
no issue should be paid upon his death to his brother, including any
surplus income that may have been accumulated by the executors,
and the only change is that one brother gets such surplus income
before the death of the life beneficiary, instead of at his death. This
construction of the will necessitates a modification of the judgment
by declaring that there is but one trust, and that, after paying the
annuities directed to be paid by the will, the surplus income be di-
vided into two equal parts, and one part be paid to each of the two
sons of the testator until the birth of a child of one of the testator's
sons, in which case the surplus income of the son having the child
is to be paid to the child, and not to the brother of the son of the
testator having issue.

In another respect, also, we think the judgment appealed from must
be modified. By the fourth clause of the judgment it is provided that:

"Out of the total net income collected by the plaintiffs between the time
of the testator's death and January 11, 1903, when the defendant Le Roy
Soher came of age, they set apart the sum of $10,650.55, which is hereby
determined to be such an amount as will, with interest at three per cent. per
annum, compounded semiannually, produce by November 2, 1914, the sum of
$15,000, and hold, manage, and invest said sum, accumulate the income
therefrom, and pay said sum and accumulations therefrom to the defendant
Rodney Soher when he arrives at the age of twenty-one years."

We can see no reason why the total sum necessary to make provi-
sion for the payment of $15,000 in 1914 should be deducted from the
accumulated income, before the arrival of the older son at the age
of 21 years. We think this provision of the judgment should be
modified so as to direct the executors to take out of each year's in-
come an amount which, with interest, will produce the sum of $15,-
000 upon the 2d day of November, 1914, and, upon the arrival of
Rodney Soher at the age of 21 years, to pay this sum of $15,000 to
him under the provisions of the second clause of the will. A sim-
ple calculation will show the amount which the trustees shall deduct
from each year's surplus income, which would be sufficient to pro-
duce that amount upon the arrival of Rodney Soher at the age of
21 years.

We think, also, the clause at the end of the sixth paragraph, that
"upon the happening of either of these events the plaintiffs may ap-
ply to the court at the foot of the judgment to be entered in this
action for directions as to what distribution of the surplus income
shall thereafter be made," should be stricken out. Any direction as

to surplus income made after the birth of children in whom there would be a vested remainder of this property, and who, under the statute, would be entitled to be paid a portion of the surplus income, could only be made in an action to which those children are parties; and upon the birth of a child the proper proceeding would be to apply to the court for instructions in an action in which the child or children were made parties.

The judgment appealed from should therefore be modified in accordance with the views herein expressed, and the judgment, as modified, affirmed, with costs to all of the parties who have appeared in this action, payable out of the principal of the estate.

VAN BRUNT, P. J., and LAUGHLIN, J., concur.

PATTERSON, J. (dissenting). While agreeing in the general result following the views expressed by Mr. Justice INGRAHAM, I am unable to concur in the opinion that there is but one trust estate created by the will of Mr. Soher. I agree with the referee that it was the intent of the testator to give to the issue of each of his sons one-half of his residuary estate, to vest in possession upon the death of the father, and that, during the lifetime of the father of such issue, he is to receive a portion of the income of such one-half, and the balance to be accumulated for the benefit of such issue. The corpus of the estate and accumulations are by the scheme of the will to be held in trust for the grandchildren, per stirpes; such accumulations to be diminished by the allowances made to the testator's two sons by way of annuities on a rising scale. The primary question is, can the unlawful provision as to accumulations be cut out of the will, so as to make otherwise valid provisions stand, without doing such violence to the will as to defeat testamentary intention? The reasons presented by the referee for adopting the affirmative of that view are entirely satisfactory. The surplus income over and above that required to be paid to the testator's sons by the terms of the will is to be treated as undisposed of, and goes to the owners of the next eventual estate, in the manner pointed out by the referee. As to the $15,000 legacy to the testator's son Rodney, I agree with Mr. Justice INGRAHAM that, instead of setting aside a gross sum, which, at compound interest, would produce $15,000 on the date of Rodney attaining his majority, the fund to be created should be distributed over the intervening years until Rodney attains the age of 21, and that each year a proportionate amount of $15,000 be invested by the executors for that purpose. I also agree in the other modification of the judgment suggested by Mr. Justice INGRAHAM.

HATCH, J., concurs.