(21 Misc. Rep. 133.)

## In re CAMPBELL'S ESTATE.

(Surrogate's Court, Niagara County.   July, 1897.)

**1. EXECUTORS—ACCOUNTING—LIMITATIONS.**

Where executors under a will are bound to make annual payments to a legatee of the income of a fund in which such legatee has a life estate, the statute of limitations as to an accounting by such executors does not begin to run against the remainder-men until after the death of the legatee, nor against the legatee only with regard to such annual payments as become due.

**2. SAME—RIGHTS OF LIFE TENANT AND REMAINDER-MEN.**

Ever since the death of a decedent, a legatee, to whom was given a life estate in decedent's property, had possession of a note that had been executed by one of the executors to decedent.   It was not indorsed by the executors, nor was anything said respecting the capacity in which the life tenant was to hold it.   *Held,* that she held the note as agent for the executors, who, having failed to secure to the legatee the income that might be obtained from it, or to insure the preservation of its value for the remainder-men, must render an account of their proceedings, that the rights of the parties may be protected.

**3. SAME—LIMITATIONS—PART PAYMENT.**

The running of the statute of limitations against a legatee's right to an accounting by the executors may be intercepted by a partial payment by an executor.

**4. SAME—CO-EXECUTORS—RESPECTIVE LIABILITIES.**

An executor cannot evade an accounting on the ground that he did not join with a co-executor in making an inventory of the estate, that no part thereof came into his hands, and that he took no part in its management, though he may not be liable for waste committed by said co-executor.

Petition by Alice B. Smith to compel Leverett A. Campbell and another, executors of the last will and testament of Mary A. H. Campbell, deceased, to make an accounting.   Accounting ordered.

King, Leggett & Brown, for petitioner.

Augustus Morris, for executors.

HICKEY, S.   Mary A. H. Campbell died on or about the 7th day of July, 1884, leaving a last will and testament, which was admitted to probate in this court on or about the 5th day of March, 1885, and letters testamentary issued to Leverett A. Campbell and Merrick Campbell, the executors therein named.   The petitioner and executors are children of testatrix.   An appraisal of the personal property of testatrix was made on or about the 16th day of March, 1885.   The inventory thereof returned to this court, while properly signed by the appraisers, does not appear to have been signed or sworn to by either of the executors.   There is no dispute, however, but that the so-called inventory contains a correct statement of the personal estate of testatrix.   None of the property came into the hands of the executor Merrick Campbell, and, except that he was present and assisted at a public sale of her effects, the proof is he took no part in the management of the estate.   The will of testatrix, after making several specific bequests, provided as follows:

"And I further bequeath to the said Alice Bertha Campbell [the petitioner herein] the use of all I may die possessed during the term of her natural life, the same to be equally divided among my remaining children, or his or her legal heirs, after her death, share and share alike."

According to the inventory the bulk of the personal estate consisted of a promissory note dated April 1, 1880, for $2,258, made by Leverett A. Campbell (one of the executors herein), upon which there was due at the time of the appraisal the sum of $2,145.67. No question is raised in this proceeding but that the personalty other than this note was properly administered, and the amount represented by it seems to have been understood and treated as the residuum of which petitioner was to enjoy a life use. At the time of the death of testatrix petitioner was living with her, and continued to reside at the same place for years afterwards. The note does not appear to have been taken from the house by the executors, or either of them. It was produced for appraisal by the executor Leverett A. Campbell, and he testified that it was left there with petitioner and her sister. It was not indorsed by the executors, or either of them, and, assuming that it was left in the possession of petitioner alone,—which, however, is not quite clear,—nothing seems to have been said in respect to the capacity in which she should hold it. It may be said to have remained in her actual possession from her mother's death down to the present time. Leverett A. Campbell testified that he had access to it at all times, and that he made two payments of interest thereon, as follows: April 1, 1885, $121.29; April 1, 1886, $121.74. He further says that he indorsed these payments on the note with his own hand. The money thus indorsed upon the note was paid to the petitioner. Since this, three other payments of money have been made to petitioner by the maker of the note, and indorsed thereon by her, aggregating $90, the last of which, amounting to $50, was made in June, 1895. Petitioner contends that these payments were made the same as the other two, and were to apply upon the life legacy which she was to receive under her mother's will. The executor Leverett A. Campbell, however, contends that the last three payments were not made upon the note, or to apply upon petitioner's life legacy, but were made to her upon other transactions between them, entirely disconnected with the estate. Having, without success, made frequent demands upon the executor Leverett A. Campbell for the payment to her of what she understood to be her due under the provisions of her mother's will, petitioner instituted these proceedings. The executor Leverett A. Campbell has interposed the statute of limitations as his defense, claiming, as stated above, that no payments have been made upon the note or to petitioner to apply upon her life legacy within the last six years, and that, therefore, the note itself is outlawed, and the statute has run against petitioner's right to an accounting. In this connection it may be remarked that he testified that he wanted the note to outlaw, but that, if it had been the note of any one else, he would have enforced collection. The executor, Merrick Campbell, has interposed the same and the further defense that he did not make or join in the making of any inventory of the estate, that no part thereof has come into his hands, and that he has taken no part in the management thereof.

It is well-settled law that under a testamentary provision such as is quoted above it was the duty of the executors herein to secure to petitioner the use and enjoyment of the residuum of this estate

during her natural life, and at the same time to preserve the corpus thereof for distribution among the remainder-men after her death. This they might have done by realizing on the note, and investing the proceeds in permanent securities, paying the income therefrom annually to the life legatee, or by turning over to her the residuum of the estate, and taking from her such security as would insure its preservation for the remainder-men. Covenhoven v. Shuler, 2 Paige, 132; In re McDougall, 141 N. Y. 21, 35 N. E. 961. It is manifest that, had the executors invested this residuum, the duty would have thereby devolved upon them of paying over to petitioner annually the income therefrom. It is quite clear, therefore, that they could not render a final account of their proceedings until the death of the life legatee, and it would seem to follow that, whether they made any such annual payments or not, the statute of limitations would not begin to run against the right of petitioner or any of the remainder-men to an intermediate accounting at any time during the life of the former. Such, at least, is our view of the law, although no authority has been cited in which the defense of the statute of limitations has been interposed under like circumstances. While it may be that under such a state of facts the statute would begin to run against each annual payment from the time it became due, we think it apparent, however, that it could not be said to have run against any particular annual payment until the same had become due and remained unpaid for six years or upward. Surely, it could not be urged that the statute had run against payments not yet due, and which might not become due for many years, depending upon the life of the petitioner.

Again, had the executors turned over to petitioner the note in question, or the money which it represented, with or without security from her, pursuant to an agreement or understanding that it was to be in satisfaction of her legacy, she probably would not be here urging her cause, as it would be safe to say she could not maintain it. Such rule, however, would not apply to the remainder-men. They could insist upon an accounting by the executors at any time when they felt that their interests were being sacrificed or neglected. Although the note was left in the possession of petitioner, the defense is not set up that it was turned over to her in satisfaction of her legacy, and, although some such argument is advanced in the brief filed by the executors, yet the evidence will not warrant an inference that she held it otherwise than as their agent or bailee. Under these circumstances her possession must be held to be the possession of the executors, and they, having failed not only to secure to petitioner the enjoyment of the advantages bestowed by her mother's will, but having also failed to take steps such as will insure the preservation of the estate to the remainder-men, must be required to render an account of their proceedings, to the end that the rights in question may be protected.

But should our view of the law, as given above, be untenable, yet there is another reason why the proceeding should be maintained, at least as to the executor Leverett A. Campbell, for, after a careful

consideration of the evidence, we have reached the conclusion that the payment by him of $50 in June, 1895, as well as all the other payments referred to, were intended as payments upon the note in question, and to apply upon the life legacy of petitioner. No authority has been called to our attention holding that payments by an executor to a legatee within the six years preceding the commencement of proceedings to compel him to account renders the defense of the statute of limitations unavailable. We see no reason, however, why such a payment should not be held to intercept the running of the statute the same as payment in any other case. In other words, we hold that the general rule that a proceeding of this kind must be commenced within six years from the expiration of one year after the granting of letters testamentary is subject to the exception that the running of the statute may be intercepted by the acts of the executor, and that payment by the executor, the same as payment upon a debt by an individual, would bring the case within the exception. Or, to put it in a still different light, the running of the statute against a legatee's right to an accounting may be intercepted by the acts of the executor the same as its running may be intercepted in respect to an overdue debt. It follows, therefore, that, payments having been made to petitioner within the last six years to apply upon her life legacy, the defense of the statute of limitations has not been made out, and the executors should be required to account.

As to the further defense set up by the executor Merrick Campbell, we do not think it available here. It does not follow, however, that, because he may be liable to render an account of his proceedings, he will also be liable to make good any waste which may have been committed by his co-executor. The fact, however, that both these executors are remainder-men may have some bearing upon that question. We think the issue involved here is whether or not the executors should render an account of their proceedings. We have reached the conclusion that they should. And when they have done this the question will be presented as to what extent each is liable in case a shortage is found to exist, and will be passed upon at that time. Let an order be entered requiring the executors to render an account of their proceedings on or before December 12, 1897, the costs of this proceeding to be adjusted upon such accounting.

Ordered accordingly.