---

(84 Misc. Rep. 312)

### In re TOMS' ESTATE.

(Surrogate's Court, Saratoga County.   February, 1914.)

1. WILLS (§ 632*)—BEQUESTS—CONSTRUCTION.

   A will, after directing the annual payment of $200 to testator's widow out of the principal and interest of a certain bond and mortgage, provided that, in case of her death before payment to her of an amount which equaled the amount unpaid on the bond and mortgage at testator's death, the balance should be divided among his grandchildren. The payments made to her annually for 15 years, and until her death, averaged less than $200, so that at the time of her death there remained unpaid on her annuity $1,088.85. Held, that her legacy vested immediately upon the death of her husband, and she became absolutely entitled to each of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

annual payments, and that hence the unpaid annuity should be paid to her legal representative.

· [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1483; Dec. Dig. § 632.*]

2. ANNUITIES (§ 6*)—ALIENATION.

An annuity, being simply a bequest of a specific sum payable periodically and not in the nature of a trust, is not subject to the statutory provisions prohibiting a beneficiary from alienating the benefits of a trust fund.

[Ed. Note.—For other cases, see Annuities, Cent. Dig. §§ 15–20; Dec. Dig. § 6.*]

3. WILLS (§ 630*)—BEQUESTS—VESTING OF INTEREST.

Where futurity is annexed to the substance of a gift by will, the vesting is suspended; but, if it relates to the time of payment only, the legacy vests instantly.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1464–1480, 1486, 1487; Dec. Dig. § 630.*]

4. WILLS (§ 729*)—PAYMENT OF ANNUITY—APPLICATION BY BENEFICIARY.

Where a will directed the executor to pay a certain annual sum to testator's widow, she was entitled to apply payments, made to her by the executor without any designation at the time of payment, on whichever she saw fit of the annuities which were due and not fully paid.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1781–1784; Dec. Dig. § 729.*]

5. EXECUTORS AND ADMINISTRATORS (§ 314*)—LIMITATIONS—COMMENCEMENT OF PERIOD—EXECUTOR'S ACCOUNT—APPLICATION OF STATUTE.

Code Civ. Proc. § 1819, providing that the statute of limitations begins to run only when an executor's account is judicially settled, applies only to an action and not to a special proceeding instituted under Code Civ. Proc. § 2722, to compel payment of a legacy.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 927; Dec. Dig. § 314.*]

Judicial settlement of the account of John J. Toms, as executor of the will of Jesse S. Toms, deceased. Decree according to opinion.

George B. Lawrence, of Stillwater, for executor.
Willis W. Roe, for Ella Vetal Myers.
Frederick C. Filley, of Troy, for Willard Rogers.
H. H. Corbin, of Saratoga Springs, special guardian.

OSTRANDER, S. This is a proceeding for settlement of the account of John J. Toms as executor of the will of Jesse S. Toms, deceased. The testator died November 19, 1896, leaving him surviving his widow, Esther C. Toms, also numerous descendants by a former wife.

By the will testator bequeathed certain legacies to various descendants and also made provision for his widow. The will was admitted to probate January 20, 1897. Among other properties, the testator had a house and lot where he lived; also, a bond and mortgage executed by one Frederick G. Edmonds and wife to him, upon which there was unpaid at testator's death about $1,750. He gave to his widow, said Esther C. Toms, the use and income· of the house and lot during her life or until her remarriage.

He bequeathed to her absolutely his household furniture of every

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

description; all the property, except the furniture, the house and lot, and the Edmonds mortgage, was given to various of his descendants, and this part of the property valued at about $2,000 was distributed shortly after his death. At the death or remarriage of the widow, the house and lot were directed to be sold and the proceeds distributed to his grandchildren. There is no serious dispute as to what disposition shall be made of that part of the estate, but a controversy is raised over the disposition of so much of the Edmonds bond and mortgage, or the proceeds thereof, as remained in the hands of the executor and accountant at the death of the widow in 1913. A construction of such portions of the will as relate to the Edmonds mortgage is required before distribution can be made of that property.

[1] The provisions of the will which relate to the Edmonds bond and mortgage are as follows:

In paragraph 4 he states:

"I also give, devise and bequeath unto my said wife the further sum of two hundred dollars ($200) annually, the same to be paid to her annually out of the principal and interest of a certain bond and mortgage, which I now hold upon and against the farm now owned by one Frederick Edmonds * * * and from such source only, and I hereby will and direct my said executor to keep said bond and mortgage so given to me by said Frederick Edmonds and his wife as aforesaid separate and apart from the balance of my said property and estate, and to retain possession of the same, and to pay to my said wife from and out of the proceeds of the principal interest thereof and thereon the said sum of two hundred dollars ($200) annually on the second day of April in each and every year after my decease, so long as the principal and interest, of and upon said bond and mortgage will pay the same; it is further my will and I hereby direct that this annuity to my said wife shall cease so soon and whenever the principal and interest, of and upon said bond and mortgage shall have been fully paid, and said mortgage and the money due and to grow due thereon shall have been paid over by my said executor to my said wife, provided she shall live long enough to use up and exhaust the same above principal and interest. If my said wife shall die prior to the time when all of the interest of and upon said bond and mort-• gage shall have been paid over to her under this provision of this my said will, then the balance of the principal and interest of and upon said bond and mortgage shall go to and be divided among my grandchildren as hereinafter directed, for the division of the remainder of my estate. The foregoing provisions for my said wife are intended to be and shall be accepted by her in the place and stead of her dower rights, and thirds, and all other rights and interests she may or might have in my property and estate either real or personal as my widow."

In paragraph 7 the testator further refers to the said annuity in this language:

"I hereby order and direct that all the rest, residue and remainder of my property and estate, after the said bond and mortgage so as aforesaid given by Frederick Edmonds to me, the principal and interest of which is hereinbefore directed to be paid by my said executor to my said wife Esther, in annual installments of two hundred dollars ($200) each and my said house and lot, the use of which is hereinbefore given, devised and bequeathed unto my said wife, as long as she remain my widow," etc.

In paragraph 9 the testator provides, among other things, that, after the death or remarriage of his wife and the sale of the house and lot, the executor shall divide the balance that may remain unpaid

upon the said bond and mortgage at the time of the death or remarriage of his said wife to his grandchildren.

In the tenth paragraph he directs his executor to pay the taxes, insurance, and necessary repairs for the house, and to deduct the amount thereof from the amount of the annuity of $200, which he is thereinbefore directed to pay to the widow, and that he shall be required and compelled to pay to the widow the balance of such annuity then remaining, and such balance only in each year, notwithstanding any provision thereinbefore contained for the payment of said annuity of $200 to said widow annually.

He further directed that the amount so paid by the executor for taxes, insurance, and repairs should be taken and considered as a payment or payments upon the annuity to the amount so expended.

The executor having entered upon his duties failed to collect and pay over to the widow the sum of $200 annually from the proceeds of the Edmonds bond and mortgage, but did collect certain sums thereon which he paid over to her from time to time. In 1901 he paid her $204, being $4 in excess of the amount required, and in 1909 he paid her $220, being $20 in excess of the required $200. During each of the other years subsequent to the testator's death, the amount paid the widow was not equal to the amount directed to be paid her. So there remained 15 years in which the payments directed to be made were $200 annually, but in which the total payments amounted to only $1,719.96. The payments varied in each year, but the average for the entire period of 15 years was $114.66 per year.

There appears to have remained unpaid on said bond and mortgage at the time of the death of the widow the sum of $1,088.85, and interest thereon from April 1, 1913.

If the $200 per year had been paid her, as directed by the will, the whole principal and interest of the Edmonds mortgage would have been exhausted prior to her death.

Subsequently to the widow's death her son and sole heir was appointed her administrator. He claims the proceeds of the Edmonds bond and mortgage remaining in the hands of the executor as funds belonging to his mother's estate and which accrued to her during her lifetime. The executor, on the other hand, claims that the amount of the annuity not actually paid over to the widow abated at her death, and that the balance of said mortgage funds in his hands should be distributed to the residuary legatees under the will of deceased.

In support of his claim that the sums directed to be paid to the widow each year during her life were inalienable by her and forfeited by her failure to use such sums in full during her lifetime, the learned counsel for the executor cites several cases of which Matter of Hoyt, 8 N. Y. St. Rep. 786; Matter of Jones, 10 N. Y. St. Rep. 163; Cochrane v. Schell, 140 N. Y. 516, 35 N. E. 971; Cutting v. Cutting, 86 N. Y. 522; Herzog v. Title Guarantee & Trust Co., 177 N. Y. 86, 69 N. E. 283, 67 L. R. A. 146; Matter of Williams, 187 N. Y. 286, 79 N. E. 1019; Stringer v. Young, 191 N. Y. 157, 83 N. E. 690; Matter of Ungrich, 201 N. Y. 415, 94 N. E. 999—are examples. In each of these cases the will created an express trust, and

the funds which were held to be inalienable by the cestuis que trustent were the subject of such trust provision. Hence, under well-established rules and under the statute, the cestuis que trustent, in such cases, could not alien the trust fund created for their benefit.

But in the case under consideration there is no trust created by the terms of the will. The Edmonds mortgage was not given to the executor in trust for the benefit of the widow. He simply held the same, as executor, with directions to pay her from this mortgage $200 per year. The directions for payment related simply and solely to the time when her legacy of $200 a year should be payable. This legacy, payable $200 annually, was expressly bequeathed to her and not to the executor in trust for her.

[2] Annuities like the one created by this will are simply bequests of certain specific sums payable periodically. They do not possess any of the elements of a trust. Redf. Surr. § 737a; Matter of Collins, 144 N. Y. 522, 39 N. E. 629; Reid v. Brown, 54 Misc. Rep. 483, 106 N. Y. Supp. 27.

They are therefore not subject to the provisions of law which forbid the alienation by a beneficiary of the benefits of a trust fund. In Reid v. Brown, supra, the court (Judge Truax) cites the case of Stokes v. Cheek, 27 Beav. 620, in which it was expressly held that an annuity might be sold. Judge Truax says, page 483 of 54 Misc. Rep. page 28 of 106 N. Y. Supp:

"If the testator had deemed it necessary to protect the plaintiff against herself he could have done so through the instrumentality of a trust."

To the same effect is De Graw v. Clason, 11 Paige, 136, where it was held that an annuity bequeathed by the testator to his widow in lieu of her dower and charged upon his real and personal estate by his will is liable to the claims of the creditors of the widow and may be reached by a creditor's bill against her.

The legacy being given to her in lieu of her dower and thirds became a debt of the estate for a good consideration. Redf. Surr. (7th Ed.) § 745; Wilmot v. Robinson, 42 Misc. Rep. 244, 86 N. Y. Supp. 575.

In this last case Judge Herrick held that, where the personalty was insufficient to pay the debt thus created, resort might be had to the realty for its payment like other debts.

In the case under consideration, however, the legacy appears to be limited expressly to the fund consisting of the Edmonds bond and mortgage, and no resort can be had to the rest of the estate should this fund prove insufficient.

The widow's administrator insists that her legacy was demonstrative, and that, as it proved insufficient to pay her $200 annually for life, resort should be had to other property of the estate, so far as necessary, for its payment. But the answer to this is found in the will which provided that the annuity should cease when the mortgage was exhausted. This condition was annexed to the gift which the widow accepted in lieu of her dower.

Did the legacy to the widow become vested so that she became en-

titled to the successive sums directed to be paid to her each year during her life?

[3] A legacy is contingent when the enjoyment of it depends upon the happening of some event—as the arrival of the legatee at a certain age or some similar contingency—and is vested when given generally. In the latter case, if payable out of the personalty, it vests immediately upon the testator's death. The leading inquiry, upon which the question of vesting or not vesting turns, is whether the gift is immediate, and the time of payment or of enjoyment only postponed, or is future and contingent, depending upon the beneficiary arriving at age, or surviving some other person, or the happening of an uncertain event. If futurity is annexed to the substance of the gift, the vesting is suspended; but, if it appear to relate to time of payment only, the legacy vests instantly. Redf. Surr. § 740.

In the case at bar the gift to the widow was immediate and did not depend upon any condition. It was payable to her in each and every year so long as she lived, provided she did not remarry, and in that case so long as she remained unmarried. There was no postponement of the gift nor any uncertainty as to its happening; but there was only a postponement of the time of payment, and the total amount was dependent upon the length of time she lived. There can be no doubt that her right to each payment became absolute upon the completion of each year during which she lived, after probate of the will.

Stress was laid by the executor upon the language of the will to the effect that he should distribute to the grandchildren, after her death or remarriage, such part of the Edmonds bond and mortgage fund as had not been paid to the widow during her lifetime, or widowhood.

I do not think that this language was intended to refer to the time of actual payment, but that it refers to the payments which should have been made to her under the terms of the will. The executor himself is one of the persons entitled to a distributive share of the residuary property. I do not think it should be held that by his neglect to perform the duty which the will cast upon him to pay her the $200 at stated intervals he would acquire a right to share the moneys which he withheld from her.

There is no suggestion that he did withhold payment, for any such reason; but the possibility of his so doing illustrates the impropriety of holding that she should lose what was improperly withheld.

It might very well happen that credit would be extended to the widow upon the faith of the payments directed to be made to her during her lifetime and which for certain reasons could not be promptly collected from the mortgage, and if the rule invoked by the executor be correct then persons who had extended to her credit upon the faith of this provision might be left without means of payment, and the widow without means of support during some protracted litigation over the mortgage. It might also well happen that the widow would find it convenient to save a portion of the funds payable to her from year to year while she was in health and able to live upon less than this income, as against time of sickness or stress when the $200

per year would not be sufficient for her support. If the executor's contention be correct, she would have been obliged to withdraw funds which were favorably invested and returning good income or lose the benefit of the legacy.

I think that, in view of the cases above cited, the legacy to the widow vested immediately upon the death of her husband, and that she became absolutely entitled to each of the annual payments which accrued during her lifetime, and that the sums directed to be paid to her became part of her estate and should be paid to her representatives. Matter of Stanfield, 135 N. Y. 292, 31 N. E. 1013.

[4] It is claimed by the executor that, even if the right to collect the unpaid annual balances survived the death of the widow, the six-year statute of limitations is a bar to recovery of any deficiency which did not accrue within that time before this accounting.

The will does not precisely prescribe the time when the payment to the widow should be first made; but, if the rule be followed which makes such legacies payable one year after probate of the will, then the first $200 became payable January 20, 1898, and an additional $200 became payable on each January 20th thereafter until her death on June 27, 1913. The total amount payable to her, had the fund been sufficient, was therefore sixteen payments of $200 each up to January 20, 1913, or $3,200, and for the one-half year of 1913, $100; in all, $3,300.

There was no year from testator's death until the widow's death, in which there was not some payment made to her, and only two years in which the whole $200 was paid to her. The whole sum paid to her appears to have been $2,167.43. If this had been applied in its course to the payments first due, without any allowance for interest upon deferred payments, it would have extinguished the payments due up until the year 1908, and leave $167.43 for application upon the amount due in 1909.

The executor not having made any designation at the time of payment, the widow was entitled to apply the payments to the moneys first due her or wherever she chose. Harding v. Tifft, 75 N. Y. 461; Farren v. McDonnell, 74 Hun, 176, 26 N. Y. Supp. 619, affirmed 148 N. Y. 741, 42 N. E. 1093.

If such application be made, there will be no period of six years during which any part of the moneys which were payable during her life remains unpaid.

[5] My attention is called to section 1819 of the Code, as authority that the statute of limitations begins to run only when the executor's account is judicially settled. But this provision applies only to an action, not to a special proceeding instituted under section 2722 to compel payment of a legacy where the six-year statute begins to run at the time the legacy is payable. The right to compel an accounting accrues one year after the granting of letters and the statute ordinarily runs against it in six years from such grant, so far as a legatee is concerned. But this rule is subject to the exception that where the executor had within six years made payments to the legatee the running of the statute is intercepted. Matter of Campbell, 21 Misc.

Rep. 133, 47 N. Y. Supp. 29. The contention of the executor must be overruled, and the balance of the fund remaining from the Edmonds mortgage paid over to the administrator of Esther Toms.

The only remaining question is the right of certain issue of Fred Toms, a grandchild of the testator, Jesse Toms. Fred intermarried with one Ella Vetal, and the issue of this marriage was a child, Jennette Toms. Fred later died. Said Jennette died without issue, and her mother, now Ella Vetal Myers, her administratrix and sole next of kin, claims the share of the estate which would have belonged to Fred Toms had he survived. Subsequently to his marriage with Ella Vetal and during her life, Fred Toms bigamously married one Dolly Wright, now May Wood, and by this marriage had three children, Harry, Fred, and Thola Toms, who are parties to this proceeding and claim Fred's share of the estate. As these children were illegitimate they cannot share in the estate. The portion which would have gone to Fred Toms, had he lived, should be paid to Ella Vetal Myers as administratrix of Jennette Toms, deceased.

Decree accordingly.