In the Matter of the Estate of WILLIAM WASHINGTON COLE, Deceased.

In the Matter of the Application of CLARISSA SPRAKE, Appellant; UNION TRUST COMPANY OF NEW YORK, as Executor, etc., of WILLIAM WASHINGTON COLE, Deceased, Respondent.

Second Department, November 2, 1916.

**Decedent's estate — when legatee may elect to take capital sum bequeathed to buy annuity.**

A bequest of a sum to buy an annuity gives an election to take the money as a capital sum, and the legatee may insist that no annuity shall be bought, especially where she is past middle life and an investment against her wish and obvious interest in an annuity for her own life would have aleatory elements in which the probabilities might be all against her.

APPEAL by Clarissa Sprake from an order of the Surrogate's Court of the county of Queens, entered in the office of said Surrogate's Court on the 9th day of September, 1916, denying her application for an order directing the Union Trust Company of New York, as executor, to pay to her $10,000 as the amount of a legacy.

William Washington Cole died March 10, 1915, whose will, executed June 5, 1900, was admitted to probate on May 10, 1916. It contained this provision:

"VI. I direct my Executor to purchase within one year after my death of some Life Insurance Company or other Company sound financially doing business in Great Britain of said Executor's selection an annuity payable quarterly to each of the following named individuals, said annuity shall be such sum as the amount specified in each case shall procure. There shall be expended for each one of said annuities as follows: * * *

"4. The same sum of Ten Thousand Dollars shall be expended in each case for an annuity as above provided for each one of the following named individuals, viz:

"a. Clarissa Sprake, of London, England, wife of Henry Sprake and daughter of my mother's brother Henry Cooke."

The testator also named many legatees in the United States,

directing that for them annuities should be purchased from some life insurance company, or other company sound financially, doing business in New York city, to be selected by his executor.

The testator left a personal estate of over $1,000,000, and about an equal value in unincumbered real estate. The bequests provided for in the will, exclusive of those that have lapsed, amount to about $660,000.

Clarissa Sprake, by writing dated March 10, 1916, asked the Union Trust Company, as executor, to pay over to her the sum of $10,000 in lieu of purchasing for her an annuity as the will directed. This the executor declined unless so ordered by the court; whereupon, on June fifth last, Mrs. Sprake noticed a motion before the Surrogate's Court for such relief. From order of the Surrogate's Court denying this motion Mrs. Sprake appeals here.

*Thomas M. Rowlette* [*Andrew Tosh*, of Edinburgh, Scotland, with him on the brief], for the appellant.

*Nathan A. Smyth*, for the respondent.

PUTNAM, J.:

An affirmance here involves a departure from the settled law of England (3 Corpus Juris, 218, § 39, n. 65); of Massachusetts (*Parker* v. *Cobe*, 208 Mass. 260), and from a prior decision of Mr. Justice TRUAX at Special Term in New York county (*Reid* v. *Brown*, 54 Misc. Rep. 481). These have all supported the rule (against which we have been referred to no decision) that a bequest of a sum to buy an annuity gives an election to take the money as a capital sum, and the legatee can insist that no annuity shall be bought.

The respondent, however, urges that this is not yet settled by any controlling precedent, and that we should not sanction such a disregard of the testator's purposes.

Although the will legally speaks as of the testator's death, yet a court cannot overlook changes in the interval after the date of the will. Thus where a will directs the sale of land and a gift of the proceeds, a court of equity listens to the donee's wish expressed in view of the conditions then existing,

and readily permits him to take the land itself instead of its avails after a sale. (*Craig* v. *Leslie*, 3 Wheat. 563.) This is the practical idea that a legacy expressed to be for a particular object, such as to bind out an apprentice (*Barlow* v. *Grant*, 1 Vern. 255), or to educate a youth (*Barton* v. *Cooke*, 5 Ves. 461), or for the executors to purchase for a legatee some particular object, if the rights of third persons are unaffected, need not necessarily be devoted to such special object. (40 Cyc. 1999.)

While the law of annuities finally recognized the right of the grantor of an annuity bond to redeem and terminate such periodical payments, this power reserved to buy back the annuity was not the main reason for the legatee's right to elect to take instead the capital sum. It was originally grounded on the changes in the legatee's condition that had ensued by the time to buy the annuity. In 1725 the intended annuitant, the testator's wife, had died in three months after the testator's death. Lord Chancellor KING directed the sale of the land charged, and, after paying legacies to the children, decreed the residue to the personal representatives of the wife, who had also been named as residuary legatee. (*Yates* v. *Compton*, 2 P. Wms. 308.) Lord BROUGHAM also decreed to the representatives of the surviving wife the capital sum designated to buy her an annuity, where the wife had died before such annuity had been bought. (*Dawson* v. *Hearn*, 1 Russ. & M. 606; followed, *Matter of Robbins*, L. R. [1907] 2 Chan. 8.)

In 1797, where no special circumstances appeared, Lord LOUGHBOROUGH decreed the capital sum, saying: "Could I have prevented her selling the annuity the next day, if it had been laid out in an annuity for her? The whole £252 would have been gone." (*Barnes* v. *Rowley*, 3 Ves. 305. See, also, *Bayley* v. *Bishop*, 9 Ves. 6; *Stokes* v. *Cheek*, 28 Beav. 620.)

In 1852 the intended annuitant was allowed the principal sum, apparently without showing any special ground or motive for his election. (*Kerr* v. *Middlesex Hospital*, 2 De Gex, M. & G. 576.) Annuities in usefulness and value wholly depend on the beneficiary's age. There comes a time when mortality tables no longer guide the calculation, and the annuitant naturally objects to having his legacy made so largely a mat-

ter of speculation. At present such an annuity is not only assignable, but the right to the capital sum has been sustained in England even against the testator's express direction to the effect that none of the annuitants should be allowed to accept the value of the annuity in lieu thereof. (*Matter of Mabbett,* L. R. [1891] 1 Chan. 707.)

Thus, starting from the death of the expected annuitant before the purchase of the annuity, the English courts have reached the result that no annuity can be enforced upon a legatee against his preference for the capital. Buying an annuity works a clear injustice where the conditions at the making of the will have been long outlived, leaving a legatee at an age so advanced, or with health so precarious, that no one would then advise investing capital with an expectation that it could be restored in yearly payments being forfeited at the annuitant's death. Hence, as a matter of practical wisdom, the beneficiary who knows best his own condition and expectation of life, was allowed to say whether he would take the annuity or the capital sum outright.

How far does such right of election fit into the legal system of this State?

In 1894 it was decided that under our statute of uses and trusts (1 R. S. 728, § 55, subd. 3, as amd. by Laws of 1830, chap. 320, § 10; revised by Real Prop. Law [Gen. Laws, chap. 46; Laws of 1896, chap. 547], § 76, subd. 3; now Real Prop. Law [Consol. Laws, chap. 50; Laws of 1909, chap. 52], § 96, subd. 3), such uses and profits of land might be applied through a life annuity for the beneficiary's maintenance. (*Cochrane* v. *Schell,* 140 N. Y. 516.)

A legacy in the form of an annuity to be paid by the executors, even if not specifically charged upon real property, may, therefore, be made such a trust interest as the annuitant could not assign, not even as to particular installments, and hence is not reached by a creditor's bill. (*Rothschild* v. *Roux,* 78 App. Div. 282; *Matter of Toms,* 84 Misc. Rep. 312.)

On the other hand, a bare testamentary direction for paying an annuity is without this element of trust (*Matter of Collins,* 144 N. Y. 522), and, hence, the annuitant's interest is alienable, and subject to creditors' claims. (*Degraw* v. *Clason,* 11

Paige, 136.) In case of a trust, the title is in the trustee. In an annuity, however, the annuitant has himself the full title, and our policy does not permit such a property to be held against creditors.

Hence, in New York the plan for a bounty dispensed by periodic payments for support cannot be effectively carried out except by a trust, whereunder the fund is held by an executor or trustee, in which case such income can only be reached by an equity proceeding to reach the surplus beyond the beneficiary's requirement for support; or by a special execution under the Code of Civil Procedure, section 1391. As TRUAX, J., said: "If the testator had deemed it necessary to protect the plaintiff against herself he could have done so through the instrumentality of a trust." (*Reid* v. *Brown, supra.*)

Respondent refers to Mr. Allen's affidavit to the effect that, in this country, life insurance companies do not redeem or buy back their annuity obligations; also that here an annuitant cannot dispose of his interest to third persons, save at a heavy discount. But this local usage does not control, since the legatee's right to elect no longer is based on his ability to commute and end the annuity through its surrender. It rests on the higher ground of justice to the legatee's own interests. In this individual case, appellant has now passed middle life. An investment against her wish and obvious interest, of $10,000 in an annuity for her own life, would have aleatory elements, in which the probabilities might be all against the annuitant.

I advise that the order of the Surrogate's Court of Queens county be reversed, and appellant's application granted, with costs of this appeal to the appellant, payable out of the estate.

JENKS, P. J., CARR, MILLS and RICH, JJ., concurred.

Order of the Surrogate's Court of Queens county reversed, and appellant's application granted, with costs of this appeal to the appellant, payable out of the estate.