**In the Matter of the Estate of EMMA BEECHAM OAKLEY, Deceased.**

Surrogate's Court, Westchester County, November 20, 1931.

*Kuzmier & Milan*, for the petitioners.

*Davies, Auerbach & Cornell* [*Sydney G. Soons* and *Harrison F. Durand* of counsel], for the executors and trustees.

*E. Chase Crowley*, for residuary legatee.

*John J. Ackerman*, special guardian.

SLATER, S. The petitioners have asked for a construction of articles 4 and 5 of decedent's will, which provide as follows:

"*Fourth.* I direct my executors and trustees hereinafter named to set aside sufficient of the funds or property of my estate to provide an income to my husband, Dr. Leonard Oakley of one hundred fifty dollars per month, to be paid to him monthly during his lifetime. Upon the death of my said husband, the corpus of such trust shall be paid to my nieces, Evelyn Cook and Anita McCormack and my nephews, James Lobdell and Robert Lobdell in equal shares. In the event that either of my said nieces or nephews shall predecease my husband, then I direct that the share of my said niece or nephew be paid to the next of kin of such niece or nephew.

"*Fifth.* I direct that my executors and trustees hereinafter named set aside sufficient of the funds or property of my estate to provide an income to my niece, Emma Beecham Chick of one hundred dollars per month during her lifetime, to be paid to her monthly. Upon the death of the said Emma Beecham Chick, I direct that the corpus of the said trust be divided into two equal trusts, the income from one of said trusts to be paid to my niece, Dorothy Beecham Chick, until she arrives at the age of twenty five years, and the income from the other trust to be paid to my nephew, Forest Beecham Chick until he arrives at the age of twenty five years, and that when such persons arrive at the age of twenty five years, the corpus of such respective trusts be paid to them."

The decedent was engaged in business under the name of Beecham's Laboratory and owned real estate in Westchester county. She had overvalued her assets and failed to anticipate present values. The net estate will amount to about $50,000. After providing for annuities, she gives money legacies, by the 6th paragraph of the will, totaling about $45,000, and creates a final residuary gift. The draftsman of the will was apparently not an adept at the work; consequently, the legal confusion.

The first question to arise is whether a valid trust, or an annuity, is created. It is my opinion that a valid express trust was not created; that the direction to set aside the funds or property to provide a monthly income to the husband and to the niece falls far short of writing a valid trust. Possibly the decedent had it in mind to create a trust, because she says the " corpus of said trust shall be paid to my nieces * * *," they being the remaindermen, but the draftsman failed her. (See *Matter of Kidd,* Surrogate O'BRIEN, 142 Misc. 512; *Morse* v. *Tilden,* 35 id. 560; modfd., 74 App. Div. 132; *Matter of Fleischer,* 125 Misc. 321.)

The petitioners claim the right to elect to receive the capital sum in lieu of the annuity. This is the real question. The court has

concluded that, upon the facts of the instant case, they cannot receive the capital fund.

The right to receive a capital sum in lieu of annuity arises in two ways: (1) Where the will directs the purchase of an annuity; (2) where an annuity is created without a valid *gift over of the remainder*.

There are three New York authorities on the first mentioned subdivision which hold that the annuitant has the right to elect to take the capital sum instead of having it invested for the purpose of producing the annuity: *Reid* v. *Brown* (54 Misc. 481 [1907]); *Matter of Cole* (219 N. Y. 435 [1916]); *Matter of Bertuch* (132 Misc. 731; revd., 2d Dept., 225 App. Div. 773 [1928]). The decision in the latter case in the Appellate Division was commented upon in 29 Columbia Law Review, 370. (See *Matter of Fuller*, 227 App. Div. 801 [1929].) These New York cases followed a line of English cases: *Matter of Brunning* (L. R. ]1909] 1 Ch. 276; 78 L. J. Ch. [N. S.] 75); *Matter of Mabbett* (L. R. [1891] 1 Ch. 707; 60 L. J. Ch. [N. S.] 279; 64 L. T. [N. S.] 447; 39 Week. Rep. 537); *Kerr* v. *Middlesex Hospital* (2 DeG., M. & G. 576; 22 L. J. Ch. [N. S.] 355; 17 Jur. 49; 1 Week. Rep. 93). The same principle prevails in Massachusetts. (*Parker* v. *Cobe*, 208 Mass. 260.)

The principle was extended to its utmost limit in the *Bertuch* case, in spite of the fact that the direction contained in the will to purchase the annuity was mandatory, and the direction given that the annuitants should not be allowed to accept direct payment in lieu thereof. Apparently, this principle follows the English cases. It eliminates the cardinal principle of testator's expressed intention. The English cases upon this point are *Arden* v. *Goodacre* (11 C. B. 883); *Stokes* v. *Cheek* (28 Beav. 620). (See *Parker* v. *Cobe*, [1911] 208 Mass. 260.)

The rule to be deduced from these cases is that where the executor is directed to set aside a fund for the *purchase of an annuity*, the annuitant may elect to take the capital sum necessary to purchase the annuity in lieu thereof, and, further, that the right of election will not be *defeated* by a direction that the purchase of the annuity shall be *mandatory*.

Another situation arises where the executors are directed to *set aside* a fund to pay the annuity out of income, and which, under the rules of law, if insufficient, must be paid out of corpus where there is a *gift over of the remainder*. Such is the instant case. There are three New York cases touching upon some phase of the general subject: *Morse* v. *Tilden* (*supra* [1901]); *Matter of Toms* ([1914] 84 Misc. 312); *Wells* v. *Squires* ([1907] 117 App. Div. 502). However, the question confronting this court was not raised nor decided in any of these, nor in any other New York case.

There are English cases in which there was a *gift over* after the payment of the annuity: *Carmichael* v. *Gee* (L. R. [House of Lords, 1880] 5 App. Cases, 588); *Matter of Mason* (L. R. [1877] 8 Ch. Div. 411); *Evans* v. *Walker* (L. R. [1876] 3 id. 211). These cases indicate that the courts recognize the validity of the gift over of the remainder, and that the remaindermen have a valuable interest in the corpus of the fund, the extent of which is limited only by the amount of the installments and the length of time the annuitant lives.

The annuitants herein cannot elect to take the capital sum necessary to purchase the annuity over the objection of the remaindermen. It is to be borne in mind that this will does not direct the purchase of an annuity. Learned counsel, who supplied the court with a most valuable brief upon this subject, has been unable to find a New York case which involves the right of an annuitant to elect under the circumstances here presented. To allow the annuitants to elect will be doing violence to the intention of the testator, *first,* because the testator intended the annuitant to receive annual payments and not a lump sum in lieu thereof; and *second,* because the testator intended certain designated persons to receive the fund remaining after the death of the annuitants. (See 2 Davids New York Law of Wills, § 855.)

It is my opinion that the general rule as laid down in *Matter of Cole (supra)* applies only where there is a direction to purchase an annuity, or where the rights of other persons — remaindermen — are not involved. There are two English cases which appear to be in point, in which the right of election has been denied under circumstances as here presented: *Wright* v. *Callender* (2 DeG., M. & G. 652; 21 L. J. Ch. [N. S.] 787; 16 Jur. 647); *Yates* v. *Yates* ([1860] 28 Beav. 637). In the former case Lord Justice Lord CRANWORTH said: " Lord GIFFORD held that the setting apart the fund was only a means to the end, and that if that means failed the intention was that the actual amount of the annuity should be made up out of the other assets. What Lord GIFFORD said was this: ' If there is any difficulty in making good the difference out of the general estate of the testator, she must have the deficiency raised from time to time by the sale of parts of the appropriated stock.' Now, that is, in my opinion, the equity and the only equity which the annuitant has. For I see no principle in saying that where the question is between the annuitant and those entitled to the residuary estate, the annuitant is entitled to have the annuity valued and to be paid the amount of the valuation in respect of his annuity."

Lord Justice KNIGHT BRUCE, in a concurring opinion, made this statement: " I am certainly not disposed at present to direct that

the annuity should be valued, or to do more than allow the annuitant from time to time to break into the capital of the appropriated fund for the purpose of making good any deficiency in the dividends to pay his annuity."

Thus, in this case the English court expressly held that the annuitant was not entitled to have his annuity valued and paid over where the question was between the annuitant and those entitled to the residuary estate.

In *Yates* v. *Yates* (*supra*) the court likewise denied the annuitant the right to have his annuity valued and paid over where the question was between the annuitant and those entitled to the residuary estate. In this case the plaintiff was a creditor for an annuity of £200 a year. The action was brought against the executor to have the annuity valued and paid over.

2 Jarman on Wills (6th ed.), *878, says: "Now, in form, and so far as the testator's intention is concerned, the gift of a sum to purchase an annuity for A. is not an absolute gift to him of the sum; but the conclusion that A. is absolutely entitled to the sum is arrived at in this way. The trust to purchase is first taken to have been actually executed (for it is a perfectly lawful trust), and seeing from that point of view that A. may immediately sell the annuity, the Court dispenses with the actual purchase, and holds that A. is entitled to immediate payment of the sum. But where the annuity when purchased is to be subject to a gift over, the same point of view does not necessarily present the same conclusion."

The reason for the rule is readily understandable. The life of an annuitant may drop out at any time. In the instant case, there will be insufficiency of corpus to pay the two annuitants. If one should die, however, there would be ample corpus to pay the other annuitant as long as he or she might live, and the corpus would be saved for the remaindermen. After the death of one annuitant, the chance of wearing away the corpus is gone.

I hold that the annuities should not be valued and a capital sum paid to each annuitant. The court directs that the estate funds be set aside, so calculated as to produce an income of $150 per month for the benefit of Leonard Oakley, and to produce an income of $100 per month for the benefit of Emma Beecham Chick. Should the income earned by the fund at any time be insufficient to permit these monthly payments from income, the principal should then be encroached upon to the extent necessary to make up the deficiency in each payment. Upon the death of the annuitants, the remainder of the corpus will pass as directed by the will.

Submit decree.