## In the Matter of the Estate of DANIEL LEVY, Deceased.

Surrogate's Court, New York County, November 15, 1950.

*David L. Charal* for Rebecca Waller, petitioner.

*N. William Welling* for Daniel Levy and another, as executors of Daniel Levy, deceased, respondents.

FRANKENTHALER, S. The beneficiary of an annuity seeks to compel the executors to pay to her the capital sum required to purchase the annuity. The testator died on February 28, 1950.

Section 47-b of the Decedent Estate Law, reads: "If a person hereafter dying shall direct in his will the purchase of an annuity, the person or persons to whom the income thereof shall be directed to be paid shall not have the right to elect to take the capital sum directed to be used for such purchase in lieu of such annuity except to the extent the will expressly provides for such right, or except to the extent that the will expressly provides that an assignable annuity be purchased." The will does not expressly provide for the right of the annuitant to take the capital sum. The question, therefore, is whether the will *expressly* provides for the purchase of an *assignable* annuity.

The will, insofar as here material, reads: "I hereby direct that as soon after my death as shall be practicable my executors shall purchase an annuity or income policy for the benefit of my sister in law, Rebecca Waller, which shall insure her the payment of a monthly sum of Fifty Dollars throughout her lifetime. The policy so purchased by my executors *shall contain no provision for residue, payment, benefit, loan or surrender value in said policy upon and after the death of my sister in law*. In the event however that during my lifetime I shall have insured my life and/or bought any annuity productive of proceeds sufficient to pay my sister in law the sum of Fifty Dollars or more aforementioned either in part or in full, then pro tanto the bequest aforesaid for the benefit of my said sister in law shall diminish or lapse it being my intent that my said sister in law shall receive in the aggregate **as a result of insurance or annuities** procured by me during my lifetime **and insurance** annuity or income purchased pursuant to the provisions of this article of this will a monthly income of Fifty Dollars throughout her lifetime." (Emphasis added.) No annuity policies were purchased during the life of the testator.

Petitioner asserts that the emphasized text expresses an intent that an assignable annuity be purchased and thus gives her the right to demand the capital sum. The executors contend that the will does not expressly provide for the purchase of an assignable annuity and they say that they intend to purchase a nonassignable annuity in order to carry out the expressed intent to provide her with a fixed income during her lifetime.

Much argument is devoted by counsel to the meaning of that portion of section 47-b which grants the right of election when "the will *expressly* provides that an assignable annuity be purchased." (Italics supplied.) The legislative purpose seems plain. There must be something in the will itself which explicitly

says that an assignable annuity shall be purchased by the executors. It is not sufficient that the will be silent in that respect and thus may give the executors a certain latitude in the kind of annuity to be purchased. To come within the exception to the general rule, the intent to limit the purchase must be expressed by the testator. Of course, it is not essential that he use the precise term " assignable annuity." He may designate it by name, or he may define it by appropriate description of its essential characteristics, but in any case the provision for purchase of an assignable annuity must be found in the will.

A brief reference to the history of the statute will serve to bring out more strongly the legislative intent. Prior to 1936, the rule laid down by court decisions was that a direction in a will for the purchase of an absolute and unqualified annuity gave to the beneficiary the right to receive the capital sum in lieu of the periodic payments. (*Matter of Maybaum,* 296 N. Y. 201, 205; *Matter of Cole,* 219 N. Y. 435; *Matter of Bertuch,* 225 App. Div. 773.) In that year the Legislature enacted a new section which declared that henceforth a beneficiary would have no right to receive the capital sum " unless such will expressly provides for such right." (L. 1936, ch. 540.) In 1938, the Law Revision Commission reported to the Legislature that the 1936 statute " completely reverses the previous rule. It is not limited in its application to the case of a direction to purchase a non-assignable annuity. This result is unfortunate." (1938 Report of N. Y. Law Revision Commission, p. 367.) In its accompanying study the Law Revision Commission said: " If purchase of a non-assignable annuity is directed, then it is desirable that the beneficiary be required to take the annuity; the testator's intention would be defeated if the beneficiary were allowed to take the capital sum instead. Section 47-b applies, as well, however, when the will contains no direction to the executor to make the annuity non-assignable. Since the beneficiary's interest under an ordinary annuity, although alienable, can be assigned or surrendered only at a discount, section 47-b either makes the annuity *practically* inalienable, in spite of the fact that the testator did not indicate his intention that it should be, or results in a waste of the assets intended to benefit the annuitant." (1938 Report of N. Y. Law Revision Commission, p. 370.)

The commission accordingly recommended to the Legislature an amendment of section 47-b that would eliminate the words " unless such will expressly provides for such right ", and in its place would substitute the text: " except to the extent that his or their interests under an annuity of the type directed to be

purchased would be assignable.'' (1938 Report of N. Y. Law Revision Commission, p. 365.) A bill designed to effectuate that recommendation was introduced in the Legislature but was thereafter withdrawn. A new bill embodying the present text of the statute was thereupon substituted and was enacted. (Pp. 669, 675.) The difference between the two proposals is significant. The bill first recommended would permit a beneficiary to receive the capital sum in all cases except where the will contained a direction that a *nonassignable* policy be purchased. The bill which the Legislature approved was the exact converse of the one originally recommended. It permitted an election only where the will expressly provided for such right or where it '' expressly provides that an assignable annuity be purchased.'' (L. 1938, ch. 451.) Under the first bill, assignability in fact was the test of the right to elect, and the annuity was deemed assignable unless the testator made a contrary direction. Under the bill enacted the test of the right to elect was the presence in the will of a positive direction for purchase of an assignable annuity.

It is apparent, therefore, that under the statute the right of the beneficiary to elect does not depend upon the type of contract the executor has power to purchase or upon any rights of transfer under the policy actually purchased. The statute declares that the right of election does not exist unless the will contains a positive provision respecting assignability.

The only relevant provision of this will is the direction that the policy '' shall contain no provisions for residue, payment, benefit, loan or surrender value in said policy *upon and after the death* of my sister in law.'' All that this direction means is that a nonrefund policy be purchased. The policy is to provide only for payment during the lifetime of the beneficiary and is not to provide for refunds of any unconsumed portions to any other person. The idea of assignability is totally distinct from the idea of refundability. A nonrefund policy could be either assignable or nonassignable. Any beneficiary could assign only his own interest under the policy. There is no indication in this will that the policy purchased by the executors is to be an assignable one. The will fails expressly to provide that an assignable annuity be purchased and under the plain meaning of section 47-b of the Decedent Estate Law, petitioner has no right to receive the capital sum.

The decisions in *Matter of Lanigan* (174 Misc. 570) and *Matter of Goodman* (64 N. Y. S. 2d 76) are urged as authority for the finding that this will expressly provides for an assignable

annuity. In the case first cited, the will directed the purchase of "Refund Annuity Contracts" and gave to the respective beneficiaries "full power to designate, in such contracts, the beneficiary of any balance remaining in said annuities at the time of her death." The Surrogate pointed out that the testator had divested his estate of all future interest in the annuities and said (p. 573): "This language, in my opinion, very definitely describes an assignable annuity within the meaning of section 47-b of the Decedent Estate Law". In the *Goodman* case, the testator gave a sum of money to his trustees to purchase an annuity for a named person. The trustees were given discretion as to the form and terms of the policy but there was a direction that "said annuity shall terminate on the death of the said Ellen V. Bohlin without remainder or interest in favor of any other person or liability of the said insurance company upon the death of the said annuitant." The court said (p. 80): "The testator having divested his estate of all future interest in the annuity the annuitant could assign the same at will." The holding that the annuitant could elect to take the capital sum was based upon the earlier court decisions, without any reference to section 47-b of the Decedent Estate Law. Perhaps in those cases the text of the entire will may have justified the conclusion reached, but this court is unable to follow them to the extent that they hold that a direction for purchase of an unqualified annuity without remainder, is the equivalent of a direction for purchase of an assignable annuity under section 47-b.

It has always been the law of this State that where an annuity, when purchased, is subject to a remainder gift, the annuitant cannot take the capital sum. (*Matter of Oakley,* 142 Misc. 1, 4, 5 and cases cited.) Only an absolute and unqualified annuity would afford such a choice to the beneficiary. If a third person were given a remainder interest, obviously the annuitant could not take the capital sum required to purchase the annuity. The Legislature has over a period of years given particular attention to the rights of annuitants under wills and after research and deliberation has finally evolved a statutory rule. If we are to say that a direction for the purchase of an annuity for the sole benefit of one person is equivalent to the statutory requirement of an express direction for an assignable annuity, then all the endeavors of the Legislature have been in vain and "all these principles and distinctions, so nicely wrought and formulated, have been a waste of time and effort" (CARDOZO, Ch. J., *Ultramares Corp.* v. *Touche,* 255 N. Y. 170, 186). In a practical sense the law would remain what it has always

been. The common-law rule was that a direction to purchase an absolute and unqualified annuity gave to the annuitant the right to take the capital sum. The Legislature changed the law, petitioner would say, by denying the right to take the capital sum unless the annuity be absolute and unqualified. The plain text of the statute would make such an interpretation difficult; the statutory history makes such a construction impossible.

For the reasons stated, the court holds that petitioner cannot elect to receive the capital sum. The application is denied.

Submit decree on notice.